WILLIAM H. WOOD, APPELLANT, v. MOYLAN C. FOX
AND ANOTHER, RESPONDENTS.

JOHN N. WHITNEY, APPELLANT, v. MOYLAN C. FOX
AND ANOTHER, RESPONDENTS.

EQUITY.—DISAVOWAL BY TRUSTEE.—LIMITATION OF ACTION.—When
the trustee disavows his trust, and such disavowal and repu-
diation is known to the *cestui que trust*, the limitation of the
statute begins to run, and when the disavowal of the trust
was known to the *cestui que trust* in 1880, and no claim was
made until 1888 by the *cestui que trust*, the trustee having then
become imbecile; *held* that the suit by the *cestui que trust*
for an accounting that the action was barred by the statute
of limitations. MINER, J., *dissenting.*

EVIDENCE.—SUIT AGAINST ADMINISTRATOR.—TRUST.— In a suit
against an administrator to enforce a trust against decedent
and for an accounting thereunder, the testimony of the plaint-
iff of facts equally within his knowledge and that of the dece-
dent is inadmissible under § 3877, 2 Comp. Laws, 1888.

APPEAL from judgment of the district court of the third
district and from orders refusing a new trial. The opinion
states the facts, except the following: The findings in
both cases were precisely similar except as to the name of
the plaintiff, and were as follows:

That on and prior to October 7, 1872, the plaintiff was
the owner of two hundred and fifty shares of the capital
stock of the Eureka Mining Company of Utah, and that
on and prior to said date, Joab Lawrence, deceased, was
the owner of more than fifteen hundred shares of said
capital stock.

That prior to said date, the plaintiff delivered to said
Lawrence certificates of his stock representing 250 shares

thereof, and standing in plaintiff's name on the books of said company, and that plaintiff delivered said stock to said Lawrence to be disposed of by him,. together with his (said Lawrence's) own stock, for the joint benefit of plaintiff and said Lawrence.

That on the date last aforesaid, the said Lawrence sold and disposed of 1,500 shares of his own and said 250 shares of plaintiff's stock together with 250 shares belonging to one John N. Whitney, to one Eber. B. Ward, and as a part consideration of said sale, said Lawrence received the real estate described in plaintiff's complaint, taking the deed therefor in his own name individually; that the said Lawrence also received, in consideration of said sale of said stock, a large amount of cash in hand, besides other property. That the sum of $23,587.50 of the amount of cash received by the said Lawrence, as aforesaid, was applied by him in taking up an indebtedness against the Eureka Mining Company; that plaintiff was the owner of one-eighth of the total number of shares of said stock so sold by the said Lawrence to said Ward, the total number of said shares being 2,000, whereof 1,500 shares belonged to said Lawrence, 250 shares to said plaintiff, and 250 shares to said W. H. Wood; that the said real estate and the said $23,587.50 were received by the said Lawrence in trust for said plaintiff to the extent of an undivided one-eighth interest; that the balance of the consideration received by said Lawrence for said sale of said stock was immediately after said sale distributed between said Lawrence, the plaintiff herein, and said Wood, according to their respective interests therein.

That in recognition of said trust in favor of plaintiff in said real estate and in said $23,587.50, the said Lawrence, on November 9, 1872, executed and delivered to said plaintiff the declaration of trust set out in plaintiff's complaint. That on, to-wit: November 9, 1872, the said Eureka Mining Company of Utah executed to one Theodore

M. Tracy, trustee, a certain mortgage to secure the payment of $43,587.50; the said Tracy taking and holding the said mortgage as trustee for the said Lawrence. That $23,587.50 of said sum of $43,587.50 represented said indebtedness of said Eureka Mining Company of Utah, which had been taken up by said Lawrence as aforesaid with a portion of the proceeds of said sale of stock. That the remaining $20,000 of said $43,587.50, secured by said mortgage represented an indebtedness due from said Eureka Mining Company of Utah to said Lawrence individually; that said mortgage was not given to secure in whole or in part, any indebtedness due from said company to said plaintiff or to said Wood, on account of services rendered by them or either of them to said company.

That said mortgage was afterwards and prior to the 26th day of August, 1874, assigned by said Tracy to said Lawrence, and the said Lawrence received the same in trust for plaintiff to the extent of plaintiff's interest therein, as aforesaid, that is to say, to the extent of one-eighth of $23,587.50, and no more.

That the declaration of trust referred to in the fourth finding herein, was in the words and figures following, to-wit:

"SALT LAKE CITY, November, 1872.

"W. H. Wood:

"This is to certify that you are entitled to one-eighth interest in the real estate, mining and rolling mill stocks, and in the $23,587.50 of which the Eureka Mining Company of Utah are indebted to me, of the property acquired by me of E. B. Ward, of Detroit, Michigan, October 7th, less the farm of one hundred and sixty acres which was given to A. A. Griffith. I have received of you twenty shares of Eureka stock, your one-eighth of the one hundred and sixty shares which was given to Messrs. Griffiths & Mayhue.

"JOAB LAWRENCE."

That the said Joab Lawrence took proceedings to fore-close the said mortgage and did foreclose the equity of redemption of the property therein contained. Said property included the mining property of what had been the Eureka Mining Company of Utah. That at the time of the foreclosure, a new corporation had been organized, under and by virtue of the laws of the Territory of Utah, that had succeeded to the said last named corporation and was called the Eureka Hill Mining Company; that said Eureka Hill Mining Company had a capital stock of 10,000 shares. That said decree of foreclosure was entered on the 27th day of July, 1876, and thereafter a deed of the United States Marshal for said property was duly executed to the said Joab Lawrence.

That the said Joab Lawrence sold and conveyed to the said Eureka Hill Mining Company on the 13th day of March, 1877, all his right, title and interest in and to the said premises, and all that he had acquired under the said mortgage and the foreclosure thereof; and in part consideration thereof he received thirty per cent. of the capital stock of the said Eureka Hill Mining Company, to-wit: 3,000 shares.

That the said Joab Lawrence took said shares of stock in his own individual name on the date aforesaid, and held and retained the same in his own name until the date of his death which took place on the 28th day of December, 1888 (and claimed and received the dividends thereon, and in all respects held and treated said shares of stock and the dividends received thereon as his own property, and did not at any time recognize any right or interest therein belonging to plaintiff). That the amount of dividends received thereon at the commencement of this action amounted to $94 per share, and at the time of the hearing of this case to $124 per share.

That on the 27th day of September, 1875, the said Joab Lawrence wrote to said W. H. Wood the following letter:

"Wm. H. Wood, Esq.:

"Dear Sir—I am in receipt of yours. Hempstead advises me that the foreclosure suit will come up probably in October term, say about the last of the month. Your interest in the mortgage is one-eighth of $25,000, $3,125. The administrators in the Ward Estate have given Mr. Romeyn notice of their intention to amend their complaint, notwithstanding the demurrer to the complaint was sustained and the injunction removed as against me. I have been spending a great deal of money and time in endeavoring to protect the Detroit property. I now intend going to Salt Lake early in the month. I wish you would at once inform me when you will probably be ready to go West, or will be in Salt Lake.

"Yours, etc.,
"JOAB LAWRENCE."

And on the 26th day of December, 1875, said Joab Lawrence also wrote said Wm. H. Wood, as follows:

"Mr. Romeyn reminds me under date of the 16th inst. that the suit of Ward against Lawrence, Whitney, and Wood has been discontinued, the receiver discharged and the property placed in my possession. The entire rents have been used up, only $317 to balance, which was paid to Romeyn.        "Yours, &c.,
"LAWRENCE."

That at no time after December 26, 1875, did plaintiff claim or demand of said Lawrence any portion of said mortgage property or the proceeds thereof, or any dividends received thereon, until April 6, 1888, nor did said Lawrence recognize or admit that plaintiff had any interest therein.

On July 18, 1876, William H. Wood wrote to John N. Whitney a letter, of which the following is a copy:

"WEST MILLBURY, July 18th, 1876.
"Friend Whitney:

"Sometime since I rec'd a note from you and not having anything new to say, said nothing. I have been knocking around Boston, N. York, Phil'd and having this awful hot weather until I have got sick, and am housed and have a doctor—hope to get through it in a few days—but dont' feel worth a cent.

"When in Boston I go to the 'Silver Islet' office and find the report from the mine good, but no sales of any account. I will keep you posted on it, and if a chance does come will get you out and myself. I met Hill (of the Winnemucca) in Phil'd. How are things in Utah? And does Lawrence and you get along?

"You know you and myself have about $17,000 of our money in the mortgage, besides our portion of the Detroit R. E. and if necessary, have some money left to present my claim in court for a fair and honest adjustment. It seems to me that we should commence and claim our rights very soon, by a suit, if no other way—all I wish is what is justly due me.

"Very truly yours,
"WM. H. WOOD."

This letter was received by John N. Whitney in due course of mail and was produced by him on the trial of this action in pursuance of a notice.

On March 1, 1880, William H. Wood wrote to John N. Whitney, a letter of which the following is a copy:

"SAN FRANCISCO, March 1st, 1880.
"Mr. John N. Whitney:

"Dear Sir—Yours came to hand some time since and fully noted. What course is the best to take with Lawrence to bring him to a settlement? Will the law work in this case this late day? Our claim may be good up on the

Eureka in case he should wish to sell as I have his letter saying I was interested one-eighth in the mortgage and in the Detroit property. I think it is time something should be done, and done promptly and fearlessly, and a full exposure made if necessary. I am satisfied the mine cannot be sold if our claim is put in the right shape. I think anyone can see it and think we can claim our portion of his receipts in law. Drop me a line at once, as I now intend to start for the East and home in about two weeks, and shall stop at Salt Lake City if it may be best; find out what he intends to do. I mean Lawrence. No other way but to take the bull by the horns; I fear him not. I have closed in one to-day and he gave down his milk and came to time.       "Yours in haste,

           "WM. H. WOOD."

This letter was received by John N. Whitney in due course of mail, and was produced by him on the trial of this action in pursuance of a notice.

That the said plaintiff had actual knowledge of said conveyance to the Eureka Hill Mining Company soon after the same was made, and of the terms on which the same was made; and that he also had actual knowledge as early as the month of March, 1880, that the said Lawrence denied and repudiated any alleged interest or claim of said plaintiff in or to any part of said three thousand shares of stock, or in the dividends that had been declared and paid thereon, or in any of the property mentioned in the complaint.

That the said plaintiff knew as early as 1881, that the said Eureka Hill Mining Company had declared and paid a dividend of one dollar per share upon all of its capital stock, but never at any time, prior to the demand hereinafter referred to, did the plaintiff make any demand upon or request of said Lawrence for any part of the proceeds of said dividends.

That as early as the spring of 1886, the said plaintiff had actual knowledge that the said Eureka Hill Mining Company had theretofore declared and paid dividends upon said capital stock aggregating fifty-four dollars per share; and that the said Lawrence had theretofore received in dividends fifty-four dollars per share on each and all of said 3,000 shares of stock, but the said plaintiff never at any time prior to the demand hereinafter referred to made any demand upon or request of said Lawrence for any part or portion of the proceeds of said dividends.

That from the month of April, 1877, until the month of ———, 1885, the said Lawrence resided in the city of Salt Lake continuously, and during all of said period was absent from said city on rare occasions only, and for brief periods. That he returned to said city of Salt Lake on the ——— day of October, 1885, and remained in said city continuously thereafter until the 10th day of February, 1886, and returned again on November 1, 1886, and remained in said city continuously until the 25th day of January, 1887. That almost weekly during the years 1877, 1878, 1879, 1880, 1881 and 1882, the said plaintiff met the said Lawrence in said city and conversed with him and also met him in said city frequently in the year 1883 and the year 1884. That in November or December, 1885, and after said plaintiff had received actual knowledge of the receipt by said Lawrence of said $54 per share on said 3,000 shares of stock, he, said plaintiff, met and conversed with said Lawrence in Salt Lake City, but made no demand on or request of said Lawrence for any part of said dividends. That during the latter part of the year 1885, said Lawrence's mind began to fail so that he was almost incapable of attending to business matters, and from thence to his death such impairment to his faculties daily increased, so that from the first of the year 1888 until his death he was unable to comprehend any matter of business submitted to him. That said plaintiff never

made any demand upon or request of said Lawrence for any portion of said 3,000 shares of stock, or for any portion of the dividends which had been declared or paid thereon as aforesaid, or for any part or portion or interest in said real estate mentioned in said complaint, or the rents, issues or profits thereof, prior to April 6, 1888, on which date he did make a formal demand on said Lawrence for an accounting of his alleged interest in the said stock, real estate and rents; but that plaintiff well knew for many months prior to said demand that said Lawrence had been deprived of his reason and mental faculties, as aforesaid.

*Mr. Arthur Brown* and *Messrs. Sutherland and Judd,* for the appellant.

*Messrs. Bennett, Marshall and Bradley* and *Mr. William H. Dickson,* for the respondents.

BLACKBURN, J.:

This suit is brought to enforce a trust, and claim a large amount of money, of many thousand dollars, due the plaintiff from the estate of said decedent,—accumulations from the trust property while in the hands of said decedent. Judgment for defendants, and plaintiff appeals, and assigns for error that the evidence does not support the judgment. The complaint is as follows:

"The said plaintiff complains of the defendants, and alleges that the deceased, Joab Lawrence, died in the city and county of Salt Lake, Territory of Utah, on or about the 28th day of December, 1888. That he died testate, leaving a will, which has since been probated in the probate court of the county of Salt Lake, and that the defendants, Moylan C. Fox and Sarah M. Lawrence, have been appointed executor and executrix of the said last will and testament of Joab Lawrence, and have

qualified and entered upon the discharge of their duties as such executors, and are now the acting executors of said estate. Plaintiff further alleges that on or about and prior to the 7th day of October, 1872, he was the owner of 250 shares of the capital stock of the Eureka Mining Company of Utah. That the said deceased, Joab Lawrence, was the owner of at least 1,500 shares of the capital stock of said mining company. That prior to said day this plaintiff delivered to the said deceased, Joab Lawrence, certificates of his stock, representing 250 shares of said stock, standing in his name on the books of the company,—said Eureka Mining Company of Utah; said certificates being indorsed in blank. That he delivered the same to the deceased to be disposed of with the stock of the said deceased, and for their joint benefit. That the said deceased, Joab Lawrence, on or about the day and year aforesaid, did sell and dispose of the said stock of his own, and of this plaintiff, to one Eber B. Ward, of Detroit, Mich. That, as a part of the consideration for said sale, he received certain real property situate, lying and being in the city of Detroit, Mich., consisting of three city lots, and a building, or hotel erected thereon, commonly known and designated as the 'Mansion House Property.' That the said deceased, Joab Lawrence, procured the deed to said real property to be taken to him (the said Lawrence), individually, in his own name. That the same has since been recorded, and that the said deceased now stands the owner of record of the title to said Mansion House property. That in truth the consideration for the said Mansion House property was the sale of the said shares of stock, of which the said plaintiff was a part owner. That the said plaintiff was the owner of one-eighth of said shares of stock thus traded to the said Eber B. Ward. That the said sale and exchange was really, although not appearing of record, in trust for this plaintiff, to the extent of one-eighth interest, and the

said deed, although absolute on its face, was in truth and in fact secretly charged with a trust in favor of this plaintiff, to the extent of his one-eighth interest therein; he having furnished purchase money to that amount for the purchase of the said Mansion House property. That the said Lawrence, deceased, also received for the said shares of stock large amounts of other property,—among other things, a large amount of cash in hand, a part of which was invested in taking up an indebtedness against the said Eureka Mining Company, which was a corporation existing and doing business under and by virtue of the laws of the Territory of Utah. That the said amount of cash thus used was $23,587.50, so that, of the said proceeds of the said sale of stock, the said Lawrence received the amount of $23,587.50 in the form of an indebtedness against the said company, one-eighth of which belonged to, and was the property of, this plaintiff. That in recognition of the said trust in favor of this plaintiff in the said Mansion House property, and of the said $23,587.50, the said Joab Lawrence executed and delivered to this plaintiff on the 9th day of November, 1872, the following declaration of trust, to-wit:

"'SALT LAKE CITY, November 9, 1872.

"'William H. Wood:

"'This is to certify that you are entitled to one-eighth interest in the real estate, mining and rolling-mill stocks, and in the $23,587.50 of which the Eureka Mining Company of Utah are indebted to me, of the property acquired by me of E. B. Ward, of Detroit, Michigan, October 7, less the farm of 160 acres, which was given to A. A. Griffith. I have received of you twenty shares of Eureka stock, your one-eighth of the 160 shares, which was given to Messrs. Griffith & Mayhue.

"'Joab Lawrence.'

"Plaintiff further alleges that afterwards said Eureka

Mining Company of Utah executed a certain mort-
gage to secure the said indebtedness, viz., the $23,-
587.50, and also other $20,000, the total amount
of said mortgage being $43,587.50, to one Theo-
dore F. Tracy, trustee; the said Tracy holding the
said mortgage, and the promissory note connected there-
with, as trustee for the said Joab Lawrence. That
the note was dated September 15, 1872, and the said
mortgage the 9th day of November, 1872. Plaintiff
further shows that the other said $20,000, which the said
mortgage was given to secure, was for $20,000, voted by
the directors of the Eureka Mining Company for services
to the said Lawrence, deceased, to one John N. Whitney,
and to this plaintiff. That the amount thus voted was
to Joab Lawrence, $9,000, to J. N. Whitney, $5,500, and
to plaintiff, W. H. Wood, $5,500, who had been a director
and secretary of said company, and having rendered it
services for which the said money was voted. That the
said three items of salary account, amounting to $20,000,
and the other, $23,587.50, constituted the consideration
and face of the said mortgage, or $43,587.50. That the
said account was never paid by the said company, in
money, to this plaintiff, but was included in the said
mortgage to Theodore F. Tracy. That the said mort-
gage was afterwards, and prior to the 26th day of Aug-
ust, 1874, assigned by said Theodore F. Tracy to the
said deceased, Joab Lawrence, who received the same in
trust for plaintiff to the extent of his interest therein,
to-wit, for one-eighth of $43,587.50, and for the said
$5,500. Plaintiff further alleges that on the day and year
last mentioned the said deceased, Joab Lawrence, took
proceedings to foreclose the said mortgage in the first
district court of Utah Territory, where the property upon
which the said mortgage was a lien was situate, and such
proceedings were had in said cause. That on the 27th
day of July, 1876, a decree was duly made and entered,

foreclosing the equity and redemption of the said mining property and said premises, and decreeing a sale thereof. That thereafter, in pursuance of the said foreclosure and decree, the said property and premises were sold on the 9th day of September, 1876, and conveyed to the said Joab Lawrence, deceased, individually, by deed dated the 13th day of March, 1877, and recorded in the office of the county recorder of Juab county, Utah, on the 27th day of March, 1877, Book C. That thereafter such negotiations were had that all the right, title, and interest which the said deceased, Joab Lawrence, had acquired by reason of such decree of foreclosure and sale therein, and as a beneficial owner in said trust deed, was conveyed by the said deceased to the Eureka Hill Mining Company, a corporation organized and doing business under and by virtue of the laws of the Territory of Utah. That such conveyance was by deed dated the 14th day of March, 1877, and recorded in the office of the county recorder of Juab county, Utah, on the 27th day of March, 1877, in Book C, and that the consideration for the transaction was three-tenths of the entire capital stock of said Eureka Hill Mining Company, to-wit, 3,000 shares of the capital stock of said company; its entire capital stock being 10,000 shares, of the par value of $100 each. That said 3,000 shares were issued by the said company to the said deceased in compromise and consideration of the conveyance to it of all the rights acquired by the said deceased under and by virtue of the said mortgage of $43,587.50. That through all these transactions the said deceased was acting, not only in his own behalf, but also in behalf and for the use of this plaintiff, to the extent of the interest of this plaintiff in and to the said mortgage, which was the amount of one-eighth of the said $43,587.50, and the amount of said salary, $5,500, making a total of $8,198.-43; and the said Lawrence, deceased, held the certificate as trustee for the said plaintiff to the extent of said

interest, amounting to 564 and 216–1000 shares. Plaint-
iff further alleges that he is informed and believes that
the said Eureka Hill Mining Company has from time to
time declared dividends upon its capital stock. That the
dividends declared since the said Lawrence received the
said shares of stock aforesaid, and prior to his decease,
amounted to $94 per share. That the same have been
declared on the following dates, to-wit:

| | | | |
|---|---|---|---|
| 1879—August 2 | $1 00 | per share |
| September 15 | 1 00 | " |
| October 15 | 1 00 | " |
| 1882—February 23 | 3 00 | " |
| October 11 | 2 00 | " |
| 1883—March 17 | 2 00 | " |
| June 4 | 2 00 | " |
| July 17 | 2 00 | " |
| August 1 | 2 00 | " |
| August 25 | 2 00 | " |
| August 22 | 2 00 | " |
| November 1 | 2 00 | " |
| December 5 | 2 00 | " |
| 1884—January 8 | 2 00 | " |
| February 1 | 2 00 | " |
| March 1 | 2 00 | " |
| June 5 | 2 00 | " |
| September 24 | 2 00 | " |
| November 12 | 2 00 | " |
| December 10 | 2 00 | " |
| 1885—January 6 | 5 00 | " |
| February 3 | 5 00 | " |
| April 6 | 2 00 | " |
| June 1 | 2 00 | " |
| September 7 | 2 00 | " |
| 1886—February 16 | 4 00 | " |
| September 5 | 2 00 | " |
| December 6 | 2 00 | " |
| 1887—February 7 | 3 00 | " |
| April 4 | 2 00 | " |
| July 6 | 2 00 | " |
| September 5 | 2 00 | " |

| | | |
|---|---|---|
| 1887—October 6 | $2 00 | per share |
|     November 7 | 2 00 | " |
|     December 5 | 2 00 | " |
| 1888—January 2 | 2 00 | " |
|     February 6 | 5 00 | " |
|     March 5 | 2 00 | " |
|     May 7 | 2 00 | " |
|     August 6 | 4 00 | " |
|     September 3 | 2 00 | " |

Total dividends declared $94 00

" That plaintiff further alleges, on information and belief, that the said Lawrence, deceased, received the said dividends that were declared prior to the 1st day of April, 1888, and that he had right to, and his executors now claim, the remainder of the said dividends. That they are now in the hands of the said company, and have not yet been paid over to the said deceased, or to his executors. Plaintiff further alleges that the said Eureka Hill Mining Company is very prosperous, is doing a large business, has a large amount of property, and that the shares are very valuable, to-wit, of the value of at least $100 per share, and that the said company are now so conducting the business that dividends will be continually accruing, and will be declared in the future. Plaintiff further alleges that there never has been any accounting, settlement, or examination of the affairs of the trusteeship between said deceased, Joab Lawrence, and this plaintiff, prior to his decease. That the said plaintiff had never demanded a settlement of the said trusteeship until the spring of 1888. That he then demanded a settlement of the said trust matters, which was denied, and suit brought to enforce the same in the supreme court of the city and county of New York. That said suit was undetermined at the time of the death of the said Lawrence, and abated by his death. Plaintiff further shows that he did not for many years know of the value and business

done by the Eureka Hill Mining Company, or the amount of dividends that had been declared by them, and it was only recently that he heard that they were declaring large dividends, and then, at his first opportunity, he demanded a settlement thereof. Plaintiff further shows that the said deceased, up to the time of his death, received all the rents, issues, and profits of the said real estate situate in the city of Detroit, Mich., and that the amount thereof is unknown to this plaintiff. That the title to the said real estate at the time of his said decease stood in the name of the said Lawrence; and plaintiff is fearful, unless restrained by this court, that the said executors may dispose of the said real estate, and of the said shares of stock. Plaintiff further shows that the said defendants, the executors of the estate of said Lawrence, deceased, deny that the said land and the said shares of stock are, or ever were, held in trust by the said deceased, in whole or in part, for this plaintiff, and have caused the same to be inventoried as the property of the said deceased, and threaten to settle the said estate, and divide and distribute the said property, in violation of the said rights of this plaintiff, as if the whole thereof belonged to the said Lawrence, deceased, and as if this plaintiff had no interest therein. That on or about the 10th day of September, 1889, this plaintiff presented his claim, in writing, to the said executors. That on or about the 10th day of September, 1889, the said executors rejected the said claim. Wherefore, this plaintiff demands judgment: (1) That this plaintiff be decreed to be the equitable owner, and entitled to one-eighth (⅛) of the said Mansion House property, in Detroit, Mich., and to the rents, issues, and profits thereof, and to the 564 and 216–1000 shares of the said 3,000 of the Eureka Hill Mining Company stock, and to all the dividends that have heretofore been declared thereon. (2) That the said executors be required to account to this plaintiff

for all the rents, issues, and profits received by the said deceased upon the said Mansion House property, since the said 7th day of October, 1872, and for all the dividends received by the said deceased, Joab Lawrence, on the said 564 and 216–1000 shares of stock of the Eureka Hill Mining Company, and the interest thereon. (3) That the said executors be required to convey to this plaintiff by good and sufficient deed, one-eighth undivided interest in the said Mansion House property, in the city of Detroit, Mich. (4) That the said executors be required to assign to this plaintiff, of the said shares of stock of the Eureka Hill Mining Company, the amount belonging to him, in pursuance of the said trust, to-wit, 564 and 216–1000 shares. (5) That a receiver be appointed of the entire amount of the said shares of stock held in trust, in part for this plaintiff, by the said deceased, Joab Lawrence, to-wit, the said 3,000 shares of stock, to receive the dividends thereon, and to hold the same for the satisfaction of any decree that this plaintiff may be decreed to be entitled to recover; and that the said receiver may be also authorized to receive the rents, issues, and profits of the said Mansion House property, in the city of Detroit. (6) That during the pendency of this action the defendants, the said executors, their agents, servants, and employes, may be enjoined and restrained from selling or disposing of, or parting or interfering with, the said real property or the said personal property, the shares of stock in the said Eureka Hill Mining Company, until otherwise ordered and directed by this court. (7) That the plaintiff have such other and further relief as this court may deem just, together with the costs of this action."

The answer is a substantial denial, and a plea of the statute of limitations and the statute of Michigan as to the Detroit property.

It is seen by an examination of the complaint that in

March, 1877, the 3,000 shares of the Eureka Hill Mining Company were received by the decedent, and the other property claimed to be held in trust before that time, and the plaintiff made no claim to the decedent of any interest in the shares of stock, or in the real estate in Michigan, until in the year 1888, and not until after the decedent had become an imbecile, and wholly incapable of doing any business, as is fully shown by the evidence in the case. And no sufficient reason is given why the plaintiff slept in his rights all this time, and made no claim to the decedent for his interest either in the Detroit property or the mining stock. It is no excuse for his neglect to say that he did not know that dividends were being paid on such stock, and that is the only excuse he gives for not demanding his share of the Detroit property, and his share of the mining stock. He could have found out by inquiry, and he says he did not make any. He could have had his share of the stock set off to him, if he was entitled to any, and his interest in the Detroit property deeded to him, if, indeed, he had any interest. This has the appearance of being a very stale claim. It is a principle of courts of equity that every case is to be decided on its own merits, and is a direct challenge to the conscience of the chancellor, and precedent and authority are only valuable to educate the chancellor in what are the true principles of equity jurisprudence, and what rules and doctrines should govern the conscience of the chancellor. His decision should not be governed by his own private notions of right and wrong, but by the principles of justice formulated and declared by a long line of decisions of courts of chancery. It is a well-settled principle of equity jurisprudence that courts of equity will not enforce stale claims.

This suit is based upon a declaration of trust, as follows:

"SALT LAKE CITY, November 9, 1872.

"William H. Wood:

"This is to certify that you are entitled to one-eighth interest in the real estate, mining and rolling mill stocks, and in the $23,587.50 of which the Eureka Mining Company of Utah are indebted to me, of the property acquired by me of E. B. Ward, of Detroit, Michigan, October 7th, less the farm of one hundred and sixty acres, which was given to A. A. Griffith. I have received of you twenty shares of Eureka stock, your one-eighth of the one hundred and sixty shares, which was given to Messrs. Griffith & Mayhue.

                                        "JOAB LAWRENCE."

The important facts are as follows: In 1872 Wood and Whitney each owned 250 shares of stock in the Eureka Mining Company, which they placed in the hands of the decedent to be sold. He went to Michigan, and sold the stock along with 1,500 of his own, to one E. B. Ward, and received for the stock a good deal of money, and the Mansion House property in Detroit. He took the deed to the Detroit property in his own name, and this title is still in his heirs. The money he brought home to Salt Lake, and $2,000 he divided with Whitney and the plaintiff, and with $23,587.50 he paid off debts of the Eureka Mining Company, with the consent of the plaintiff and Whitney, and took a mortgage or trust deed for the same, and for $20,000 additional he claimed to have advanced to the company. Afterwards the mortgage was foreclosed, and the property of the company sold to pay the debt; and the decedent became the purchaser, and acquired the title to the property of the company. Afterwards a new company, the Eureka Hill Mining Company, was organized, and the decedent deeded to it the property, and received therefor 3,000 shares of the new company, excepting a mill which he afterwards sold. This transaction was completed in the spring of 1877. The decedent afterwards sold the

mill, and in the year 1879 commenced receiving dividends on the stock, and continued to receive the same up to his death, until he had received a large amount of money. The sale of the mill and the receipt of dividends were known to the plaintiff. After 1877 the plaintiff had frequent meetings with the decedent, and made no claim on him for his interest in the trust property until in the fall of 1888. In 1886 the decedent's health began to fail, and it continued to grow worse until, in 1888, he had become entirely imbecile. After the trade with Ward, he (Ward) claimed he had been badly swindled, and commenced suits against Lawrence, Whitney, and Wood, the plaintiff, for swindling him. These suits were managed by Lawrence, and the expenses thereof paid by him, amounting to somewhere in the neighborhood of $20,000. There is no evidence that Lawrence, after 1877, acknowledged the existence of any trust funds in his hands belonging to the plaintiff. On the contrary, he acted in every particular as if he was the sole and only owner of the 3,000 shares of the Eureka Hill Mining Company, and the property in Detroit. It appears, also, that as early as 1876 Lawrence had repudiated the trust, and the plaintiff knew of it; for on July 18, 1876, among other things, he said in a letter to Whitney:

"July 18, '76.

"* * * How are things in Utah, and does Lawrence and you get along? You know you and myself have about $17,000 of our money in the mortgage, besides our portion of the Detroit real estate, and, if necessary, have some money left to present my claim in court for a fair and honest judgment. It seems we should commence and claim our rights very soon by a suit, if in no other way. All I wish is what is justly due me.

"Yours, very truly,

"WM. H. WOOD."

Also, on March 1, 1880, the plaintiff wrote Whitney, among others:

" What course is best to take with Lawrence, to bring him to a settlement? Will the law work, this late day? * * * I think something should be done, and done promptly and fearlessly, and a full exposure made, if necessary. * * * No other way but to take the bull by the horns. I fear him not. I closed in one today, and he gave down his milk, and came to time.

" Yours, in haste,

" WM. H. WOOD."

These letters clearly show that Lawrence had repudiated the trust prior to that time, and the plaintiff knew it. In 1877 all the trust had been performed, and nothing remained to be done but divide the proceeds; and the plaintiff, knowing all the facts, made no claim on Lawrence for his share until 1888, after he had become imbecile, and entirely incapable of doing business. Another fact is that the declaration of trust was not in the hands of the plaintiff, but was found among the papers of Lawrence after his death, and no explanation is made why the declaration of trust was not in the hands of plaintiff; for by its very terms it is his property, if it is still in force. This would seem to point to an abandonment or a settlement and end of the trust relation. We think the evidence clearly supports the judgment. It is unaccountable that the plaintiff would have slept in his rights, where so many thousand dollars were involved, from 1877 to 1888, and until the trustee had become imbecile, without making any demand, or claim of any kind, of or against the alleged trustee, when he was aware in 1880 that the trustee practically denied the trust, considering the further fact that the trustee was financially able to respond to any just claim the plaintiff had against him. In equity a long lapse of time destroys remedies for rights, when no explana-

tion is made for the neglect to attempt their enforcement.
I think, also, that the evidence clearly shows that Law-
rence had repudiated the trust as early as 1880, and the
plaintiff knew of it.  I refer to plaintiff's letter to Whit-
ney, dated March 1, 1880.  The law is that the statute of
limitations begins to run against a claim growing out of a
trust from the time the trustee repudiates the trust and
the *cestui que trust* has notice.  These views are fully
sustained by the following authorities: *Prevost* v. *Gratz*,
6 Wheat. 504; *Lansdale* v. *Smith*, 106 U. S. 391, 1 Sup.
Ct. Rep. 350; *Hammond* v. *Hopkins*, 143 U. S. 273, 12
Sup. Ct. Rep. 418; *Philippi* v. *Philippe*, 115 U. S. 157, 5
Sup. Ct. Rep. 1181.  If it be true, therefore, that˙Law-
rence denied the obligation of the trust, and the plaintiff
had notice, the statute of limitations of the Territory of
Utah bars this suit.  2 Comp. Laws, 1888, § 3150.  As to
the claim of interest in the personal property, and in the
real estate in Detroit, and the rents and issues and profits
thereof.  Id.  § 3132.  So, if I have construed the evi-
dence rightly, this suit is barred both on account of the
laches of the plaintiff and the statute of limitations.

As the evidence in the record very clearly supports the
decree it is not necessary to consider the errors assigned
as to the finding of facts.  But there is another error
assigned that should be passed upon.  The plaintiff offered
himself as a witness, and the trial court excluded his testi-
mony, as to all matters equally within his knowledge and
that of the decedent.  This is claimed to be error.  We
think not.  This testimony comes clearly within the terms
of the statute.  It is not only a claim against an estate,
but one for many thousand dollars, and I think the trial
court held rightly on that point.

Considering the staleness of the claim, the fact that the
claim had not been pressed for more than eleven years;
that the decedent practically denied the trust, and which

26

the plaintiff knew as early as 1880, and from that time the statute of limitations began to run,—the judgment must be affirmed.

The foregoing opinion is applicable to the case of John N. Whitney against the same defendants. Therefore the judgment in that case is affirmed.

ZANE, C. J., concurred.

MINER, J., (*dissenting*):

I cannot concur with my brethren. In my opinion, there is no testimony found in the record of either case tending to show that Lawrence had repudiated the trust, or that Wood or Whitney had any notice of such repudiation. To my mind, the testimony leads to a contrary conclusion. Nor had the statute of limitations run against either claim at the time of the commencement of these actions.