Stonehill, Executor, *et al. v.* Swartz *et al.*

---

No. 14,653.

STONEHILL, EXECUTOR, ET AL. *v.* SWARTZ ET AL.

TRUST.—*Enforcement of.*—*Volunteer.*—*Parol Evidence Inadmissible to Establish Express Trust.*—In an action to enforce a trust in land, the plaintiff, who has parted with nothing, can not show by parol that a grantor conveying land by a deed absolute had an oral agreement with the grantee that the latter should have a life-estate in the land, and hold the remainder in trust for said plaintiff.

SAME.—*Parol Evidence.*—An express trust can not be established by parol evidence.

SAME.—*Action to Enforce.*—*Statute of Limitations.*—Where a trustee, ignoring an alleged trust, sells and mortgages the trust lands as his own, and disposes of the same by will, without remonstrance from the *cestui que trust*, the latter can not, after more than twenty years have elapsed, bring an action to enforce a trust in such lands.

QUIETING TITLE.—*Statute of Limitations.*—An action to quiet title is barred in fifteen years.

From the Newton Circuit Court.

*J. S. Saunderson, F. A. Comparet, E. P. Hammond* and *W. B. Austin,* for appellants.

*S. P. Thompson,* for appellees.

OLDS, J.—The appellees, Sarah C. Swartz and Julia A. Knouff, brought this suit in the court below, against the appellants and their co-appellees, to establish and enforce an alleged trust in certain real estate situate in Newton county, Indiana, to which John Sell had the legal title, and had been in possession of for more than twenty years prior to his death, and asking to have their title to the same quieted. The complaint was in three paragraphs. Demurrers were sustained to the second and third, and overruled as to the first. Appellants answered in ten paragraphs,—the first a general denial, and the others were affirmative answers, pleading the statute of frauds of Ohio against the verbal contract between Jacob and John Sell, whereby an alleged trust was created, setting up the fifteen years' statute of limitations against part of the complaint which sought to enforce the trust against the lands situate in Indiana, and sold by the deceased in his lifetime, pleading an estoppel against the recovery for the lands sold by the executor, and setting up an election by appellees to take under the will, and also a family settlement whereby they were estopped from asserting the claims set forth in their complaint. A demurrer was sustained as to the second paragraph of answer.

The plaintiffs below filed a reply in four paragraphs.

There was a trial by the court, and a special finding of facts and conclusions of law stated by the court, to which conclusions of law appellants jointly and severally excepted. Exceptions were also reserved to the rulings of the court on demurrers.

Motions were made by the appellants to require the court to restate its conclusions of law, for judgment in their favor on facts found, for a new trial, for *venire de novo,* and in arrest of judgment; all of which motions were overruled and

exceptions reserved. Errors are properly assigned on the several rulings of the court.

The principal discussion by counsel for the appellants relates to the sufficiency of the facts found to sustain the conclusions of law stated by the court, and the judgment rendered in pursuance therewith.

So much of the finding of facts as are material for the decision of the case are as follows:

" 1. That said decedent, John Sell, was married twice. His first wife, Lydia Sell, to whom he was married about 1835, was the daughter of Jacob Sell, of Adams county, Pennsylvania. Said Lydia died about 1848, leaving surviving her her said husband John Sell, and three children by said John Sell, to wit: The plaintiff, Sarah C., who was married to John H. Swartz in 1860, and divorced from him in 1874 ; also the plaintiff Julia A., who is the wife of John Knouff; and also Susan, who died in 1858, at the age of about eleven years. Said Sarah C. Swartz was born in 1837. Said Julia A. Knouff was born in 1842. The second wife of said decedent, John Sell, was the defendant Elizabeth Sell, to whom he was married about 1848, and who is the widow of said decedent, her age, at this time, being 74 years. The children of said John Sell, by his second wife, are the defendants, Mary J., who is the wife of the defendant Philip Stonehill, and Emma R., who is the wife of the defendant Alexander G. Geizelman. Said Mary J. was born in 1849. Said Emma R. was born in 1853. The defendants Clara and Sherman Swartz, and Lilly Maloney, married to the defendant George Maloney, are children of the plaintiff Sarah C. Swartz by said John H. Swartz. Said Jacob Sell, the father of said John Sell's first wife Lydia, died at his residence in Adams county, Pennsylvania, in 1855. Said John Sell died in said Newton county, where he had resided over seventeen years, on the 14th day of January, 1886.

" 2. Said Jacob Sell, on October 3, 1805, became the owner by patent from the United States, of the southeast

quarter of section eleven, township eleven, range eight, in Starke county, Ohio. Soon after said John Sell, who then resided in Adams county, Pennsylvania, married said Lydia, said Jacob told said John that if he, said John, would move to Starke county, Ohio, and settle upon said land that he would some day convey the same to said Lydia, it being said Jacob's intention to convey her said land as an advancement. Said John and his wife, said Lydia, moved to and located upon said land, pursuant to said promise, and were residing there at the time of her death. Said John continued to live on said land for many years after his second marriage, making the same a home for himself and family. Said Lydia died without having received any conveyance of said land. Having failed to convey said real estate to said Lydia, and still holding the title thereto, said Jacob Sell on the 16th day of October, 1854, conveyed said real estate by deed, with full covenants of title, to said John Sell, his heirs and assigns forever."

"The consideration expressed in said deed was twenty-one hundred dollars, but nothing in fact was paid by said John to said Jacob for said real estate, the conveyance being made to him from the fact of said Jacob's intention to have conveyed said real estate to said Lydia as an advancement, and it being conveyed to said John because of said Jacob's failure to convey to said Lydia during her lifetime.

"3. At the time of executing said deed said John, who, with his family, had been residing on said land many years, was on a visit to Adams county, Pennsylvania. Said Jacob said to him : 'John, you go back to Starke county, Ohio, and improve that land' (referring to the land described in said deed) 'for your own convenience and comfort. Lydia' (referring to said John's deceased wife) 'always spoke well of you. I don't want to deprive you of a home. I will give you that land with the understanding that you are to have the use of it during your life, and at your death it is to go to Lydia's children' (referring to said plaintiffs and

to their said sister Susan). Said John then verbally agreed with said Jacob to accept a conveyance of said real estate upon said conditions, and said deed was then executed; the said contemporaneous verbal understanding, between said Jacob and said John, being that said John was to have an estate in said land during his (said John's) life, and that at his death, said real estate should go to the children of said Lydia. There was nothing said as to what was to be done to effectuate a conveyance of said real estate to said children at said John's death, except that said John was to see that Lydia's children got the land at his death. There was no writing whatever pertaining to said verbal understanding. Prior to said transaction, said Jacob had executed a will devising said real estate to said Lydia's children, but upon said John agreeing to accept said conveyance upon said verbal conditions, and at the time of executing said deed, said Jacob destroyed said will. Said John remained on said land for many years after the execution of said deed to him by said Jacob, making it a home for himself and family. His said family, at the time of said conveyance, consisted of his three children by his first marriage, his second wife, and his said two children by his second wife, all of whom were residing with him upon said land.

" On February 3d, 1865, said John Sell and his wife, said Elizabeth Sell, conveyed by warranty deed to Mary Bard, wife of Samuel Bard, said real estate in Starke county, Ohio, except seventeen and $\frac{30}{100}$ acres, previously conveyed to other persons, which deed to said Mary Bard was duly recorded on October 20th, 1865. The consideration as expressed in said deed was ten thousand dollars.

" On October 11th, 1864, said Samuel Bard conveyed to said John Sell, by quitclaim deed, the following real estate in Newton county, Indiana, to wit : That fraction lying on the south side of the Iroquois river of S. E. qr. of S. E. qr., sec. 25, containing five and $\frac{80}{100}$ acres ; also the fraction lying on the south side of said river in S. W. qr. of S. E. qr., sec. 25, con-

taining two acres; all in township 28, range 9. October 11th, 1864, said Samuel Bard and wife conveyed to John Sell, by warranty deed, the following real estate in said county of Newton, to wit: The S. E. qr. of the N. E. qr., sec. 36 ; lot one (1) of said section in township 28, range 9, also E. ½ of S. W. qr. and N. W. qr. of S. E. qr. of sec. 19, and N. W. qr. of sec. 31, and S. part of S. W. qr. of sec. 30, being all that part lying south of Iroquois river, all in township 28 north, of range 8 west, containing 340 acres. Both of said deeds were duly recorded. The consideration as expressed in the first of said deeds from said Bard and wife was $168. The consideration as expressed in the second of said deeds was $7,200. Said deeds were in fact executed by said Bard and wife to said John Sell in a trade for said real estate in Ohio. In said trade said land in Ohio was estimated as being of the value of twenty-six hundred and thirty-two dollars more than said land in Newton county, Indiana, and in payment of this amount, and also in consideration of the further sum of $1,-168 which said John Sell paid to said Bard, said Bard and his wife, on February 10th, 1865, conveyed by warranty deed to said John Sell the following real estate in Newton county, to wit: N. E. qr. of sec. 24, township 28, range 9; W. ½ of N.W. qr., sec. 19, township 28, range 8, also part of S. W. qr. sec. 29, township 28, range 8, bounded as follows : Beginning on south line of said quarter section, 15 rods east of S. W. corner thereof; thence east 20 rods, thence north to north line of said qr.; thence W. 20 rods ; thence south to place of beginning, containing in all 240 acres. All of said deeds from said Bard and wife to said John Sell were duly recorded on March 4th, 1865. Of lands conveyed by said Bard and wife to said Sell, the latter afterwards conveyed by deed, in which his wife, Elizabeth, joined, to persons and at prices as follows, to wit:

"On October 3d, 1870, to Orlando Bush, the E. ½ of S.W. qr., sec. 19, township 28, range 8, and N. W. qr. of S. E. qr., sec. 19, township 28, range 8, at and for the sum of $1,800,

which was paid to said Sell at the date of said conveyance ; March 22d, 1883, to Wilson P. Griggs, part of S. W. qr., sec. 29, township 28, range 8, for $300, which was paid to said Sell on said day.

" In addition to the lands conveyed to decedent by said Bard and undisposed of, said John Sell at the time of his death, on January 14th, 1886, also owned in fee simple in said county of Newton and State of Indiana, 753 acres of other real estate, making in all, with said land conveyed to decedent by said Bard and undisposed of, 1,270 acres, which, at the time of said decedent's death, was of the average value of $30 per acre, making the total value of thirty-eight thousand and one hundred dollars.

" The personal property of said decedent at the time of his death, was of the value of $287.50. On May 6th, 1857, the S. E. $\frac{1}{4}$, sec. 15, township 19, range 7, in Starke county, O., was conveyed to said John Sell by Frederick Fainot for the consideration as expressed in the deed of seven thousand dollars, and on March 30th, 1868, said Sell conveyed the same land to Henry C. Wise for the consideration as expressed in the deed of eleven thousand dollars.

"At the time of said decedent's death there were mortgages upon said real estate in said county of Newton, duly executed by him and his wife, and duly recorded, as follows, to wit :

"(a) Mortgage to Samuel A. Tolman, January 7th,1884, on E. $\frac{1}{2}$, N.W. qr., sec. 24, township 28, range 9, and 80 $\frac{73}{100}$ acres in S.W. qr., sec. 13, township 28, range 9, also 39 $\frac{25}{100}$ acres in S. W. qr., sec. 30, township 28, range 8, more particularly described in the mortgage, to secure payment of note for $2,-000, executed by said John Sell.

" (b) November 1st, 1881, mortgage to Isaac Hoge on E. $\frac{1}{2}$ of S. E. qr., sec. 9, W. $\frac{1}{2}$ of S. W. qr. sec. 10 and N. $\frac{1}{2}$ of S. E. qr. and S. $\frac{1}{2}$ of N. E. qr. sec. 16, township 27, range 9, also W. half of N. W. qr. sec. 19, township 28, range 8, and the S. E. qr. of the N. E. qr. and the N. E. qr. of the S. E.

qr. sec. 36, township 28, range 9, to secure payment of note for $8,000, executed by said John Sell.

" (c) January 8th, 1886, mortgage to Edward Sanford on the N.W. qr. sec. 31, N. E. qr. sec. 24, the S. W. qr. of N. E. qr. sec. 36, township 28, range 8, and the W. ½ of the S. E. qr. and lot 1 in sec. 36, township 28, range 9, to secure the payment of a note for $5,000, executed by said John Sell. At the time of the death of said John Sell the principal of said mortgages and interest thereon to the amount of $600, in all $15,600, were unpaid. Said decedent at the time of his death was owing other sums to the amount of $3,400, making his entire indebtedness $19,000.

Said John Sell died testate on January 14, 1886. His will, which was duly executed on January 6, 1886, directed the payment of his debts, devised to his widow, the defendant Elizabeth Sell, the west half of the southwest quarter of section 10, township 27, range 9, in said county, of the value of $3,200, and bequeathed to her such amount of his personal property as she might desire to take. Said will directed said executor to take charge of all of said decedent's estate, real and personal, not devised to the widow, to lease, rent, mortgage, or sell said real estate, and to pay off said mortgages and other debts, giving the executor twelve years in which to settle said estate. Said will also directed that as soon as said estate was settled, and all of said decedent's mortgages and debts were paid, the remainder of his estate should be equally divided into four parts, one to go to the plaintiff, Sarah C. Swartz, during her natural life, and the remainder of such part, at her death, to her children, Clara and Sherman Swartz, and Lilly Maloney; one part to the plaintiff Julia A. Knouff, and her husband John Knouff; one part to the defendants Mary J. Stonehill and Philip Stonehill, and one part to the defendants Emma R. Geizelman and Alexander G. Geizelman. Said Philip Stonehill was named in said will as the executor thereof. It was the intention of said testator that said will should apply to all of the real es-

tate of which he died seized, including the undisposed real estate which had been conveyed to him by said Bard and wife.

"Said will was duly proved and admitted to probate before the clerk of the Newton Circuit Court, January 20th, 1886, and on said day duly recorded in the record of wills in said clerk's office. On the same day said Stonehill filed a bond as such executor to the approval of said clerk, and received from said clerk letters of administration of said estate, with the will annexed. At the following term of said Newton Circuit Court, namely, on the 22 day of February, 1886, said court duly approved the probate of said will, and also confirmed the action of said clerk in approving the bond and in issuing said letters of administration to said Philip Stonehill as such executor. Said Stonehill, as such executor, gave notice of his appointment, as required by law, on the 28th day of January, 1886, and on the 4th and 11th days of February, 1886. No proceedings have ever been instituted in any court by any person to contest the validity of said will or to set the same aside, and said Stonehill has continued to act, and is still acting, as such executor.

"At the time of, and for many years before and since the death of said decedent, said plaintiff Julia A. Knouff and her husband John Knouff, said defendants Geizelman and Geizelman and Stonehill and Stonehill resided in said county of Newton, not far from the residence of said decedent. Said plaintiff Sarah C. Swartz formerly resided in said county, but for many years has resided in Chicago, Illinois. She attended her father's funeral, and on the day thereafter, namely, on January 18th, 1886, it being her intention to go home on the following day, said will was carefully read to and in the presence and hearing of said plaintiffs and defendants Knouff, Elizabeth Sell, Stonehill and Stonehill and Geizelman and Geizelman. On the reading of said will none of said parties then expressed or manifested any dissatisfaction with said will or any of its provisions, and in a few mo-

ments after the will was read the parties separated. Said parties then all had a general knowledge of the extent of the decedent's property, and of the fact that he was considerably in debt at the time of his death, but did not know the amount of his debts, nor the exact value of his property, nor whether there was anything due to him from others. At the time said will was read there was nothing said as to the amount of his property or his indebtedness. At the time of said decedent's death about 900 acres of real estate, including 400 acres which had been conveyed to him by said Bard and wife, were under cultivation. Said executor, on receiving his appointment, immediately took charge of all of said real estate, and rented and leased the same during the years 1886 and 1887, collected the rents therefrom, amounting to $3 to $4 an acre, each year, and applied the same to the payment of said decedent's debts. The plaintiffs did not in any manner object to said proceedings upon the part of said Stonehill as such executor, and have never demanded possession of any of said real estate, or the accounting to them for any of the rents and profits thereof.

" Said plaintiff, Sarah C. Swartz, in the spring of 1887, before the commencement ·by either of said plaintiffs of any action herein, and before either of them filed any claim against said estate, attempted to assist said Stonehill as such executor in selling real estate under said will, to pay said decedent's debts, with the view of a speedy settlement of said estate, but none of the lands they attempted to assist in selling were any portion of the Bard lands. Said defendant Knouff also, at the same time, and for the same purpose, attempted to assist said Stonehill in selling real estate under said will. Said widow, said executor, said Stonehill and Stonehill and said Geizelman and Geizelman believed from said various acts and conduct of said plaintiffs that they had elected to take under said will, and that they would not assert any claim against said decedent's estate, not given them under said will ; and said widow, upon her own volition and

at the request of said defendants, refrained until it was too late for her to do so to make her election to take under the law. Neither of said plaintiffs have in any way renounced their rights under said will, and each of them claims her rights thereunder.

"Said widow took personal property under said will to the value of fifty dollars, making with the real estate devised to her $3,250, which she received under said will. Had she elected to take under the law, her interest in said estate would have been about thirteen thousand dollars, including the Bard land, and seven thousand dollars excluding the Bard land.

"Said decedent, during the time he held the legal title to said real estate in Starke county, Ohio, had possession of and exercised exclusive control thereover, receiving the rents and profits and paid the taxes thereon, and there is no evidence that said plaintiffs, or either of them, during the time that the title thereof was in his name, ever attempted to assert any interest therein, nor is there any evidence that there was ever any agreement between them, or either of them, and said decedent respecting said real estate. There is no evidence that said plaintiffs, or either of them, were ever consulted about, were present at, or had any knowledge of, the trade until after the said trade was made between said decedent and said Bard of said land in Ohio for said lands in said county of Newton, conveyed to said decedent by said Bard. Said decedent, on said real estate in Newton county being conveyed to him by said Bard, took immediate possession of the same, and remained in the uninterrupted possession thereof during his life, receiving the rents and profits and exercising exclusive control over the same, except as to such parts as he conveyed as aforesaid, and of this he remained in possession, and exercised control thereof until he conveyed the same, and during said time received and enjoyed the rents and profits of said real estate. There is no evidence that said plaintiffs, or either of them, during said

decedent's life, claimed any interest in said real estate, or any of said real estate conveyed to said decedent by said Bard.

" There is evidence that said decedent, on some two occasions, a few years before his death, expressed to persons other than said plaintiffs, an intention, on account of said land in Ohio having been conveyed to him by said plaintiff's grandfather, Jacob Sell, to provide in his will that said plaintiffs should have a greater share of his estate than said defendants Emma R. Geizelman and Mary J. Stonehill. Said John Sell at various times while in possession of the Ohio land, and while in possession of the Bard lands, stated that plaintiffs should have the land, or the value of the Ohio land at his death, and after the exchange of the Ohio land for the Bard land, he made such statements in the presence of the plaintiffs.

" Said plaintiffs filed no claims against said decedent's estate until the 18th day of April, 1887, which was more than one year after the probate of said will. It was in these claims that they filed amended complaints at the February term, 1888, of this court, and which were consolidated at the present term of this court. Said plaintiffs did not until the filing of said amended complaints at the said February term, 1888, of this court, seek to recover title to any of said real estate described in their complaint.

"Since the death of said decedent said Stonehill, as such executor, has sold of said real estate conveyed by said Bard to said decedent as follows, to wit:

" (a) August 8th, 1887, to Peter Herath, W. $\frac{1}{2}$ of N. E. $\frac{1}{4}$, sec. 24, township 28, range 9, for $2,400. Of this sum Herath paid the executor $1,400 in money and gave his note for $1,000, which is still unpaid.

" (b) August, 1887, to George O. Conn, E. $\frac{1}{2}$ of N. E. $\frac{1}{4}$, sec. 24, township 28, range 9, for $3,610. Of this amount Conn paid the executor $2,800 in money and assumed $400 of said

mortgage on said land, and gave the executor his note for $410, which is unpaid.

" (c) August 8th, 1887, to Samuel Merchant, the N. ½ of W. ½ of the N. W. ¼ of section 19, township 28, range 8, for $1,050.     Of this amount Merchant paid said executor $450 in money and assumed $600 of said mortgage on said land. The money so received by said executor for said lands was applied to the payment of said decedent's debts.     Said executor has also sold other lands of said decedent to the amount of $5,349, and has applied the money received on the same to the payment of said decedent's debts.     Said plaintiffs did not object to the sale of any of said lands, nor have they ever notified said executor not to sell lands as required by said will, except by such notice as may be implied from the filing of the original and amended complaints in this cause. Said plaintiffs in November, 1886, notified said executor that they had a claim against said decedent's estate, on account of their grandfather's will, which claim the executor refused to recognize, and said it was not just.     The Bard lands undisposed of are as follows, to wit: The northwest quarter of section thirty-one (31), in township twenty-eight (28), range eight (8), also the southeast quarter of the northeast quarter and lot numbered one (1) in section thirty-six (36), in township twenty-eight (28), in range nine (9), all in Newton county, in the State of Indiana."

The court stated conclusions of law as follows:

" 1st.  That from October 16th, 1854, until March 10th, 1865, the testator, John Sell, held a legal title to the southeast quarter of section .eleven (11), township eleven (11), range eight (8), in Starke county, Ohio, known as the Ohio lands, by a direct, continuing life trust, for his children by Lydia Sell, his first wife, to wit, for the plaintiffs as beneficiaries.

" 2d.  That the Bard lands, described in finding of facts, were charged with the same trust as the Ohio lands, subject to an interest in favor of the testator for eleven hundred and

sixty-eight dollars ($1,168), advanced by him, which said sum was fully repaid by the conveyance of the lands to Orlando Bush in the year 1870, of the value of eighteen hundred dollars ($1,800).

"3d. That the plaintiffs' trust in the following lands, to wit, the southeast quarter of the northeast quarter and lot numbered one (1) of section thirty-six (36), in township twenty-eight north, range nine (9),and the northwest quarter of section thirty-one (31), in township twenty-eight (28) north, range eight (8) west, Newton county, Indiana, be declared, and the title to said lands be quieted in the plaintiffs.

" 4th. That the plaintiffs should recover their costs herein."

It appears from the facts found that the deceased, John Sell, had a contract with his father-in-law, Jacob Sell, that if he would move on to the Ohio land with his family, and would improve it, Jacob would make a gift of the land to John's wife, and convey the same to her. John moved on the land with his wife about 1835, and lived upon the land until about 1848, when his first wife died, leaving her husband and three children the fruits of their marriage. John remarried in 1848, and continued to live upon the land until 1854, when he visited Jacob Sell in Pennsylvania, when Jacob said to him, " You go back and improve that land for your own convenience and comfort ; Lydia " (the deceased wife) " always spoke well of you. I do not want to deprive you of a home. I will give you that land with the understanding that you are to have the use of it during your life, and at your death it is to go to Lydia's children." John was to see that the children got the land at his death, and he agreed verbally to accept a conveyance upon said conditions, and the deed was thus executed, Jacob conveying the land to him by deed of general warranty.

There were no conditions attached to the deed, no written contract entered into, but simply a verbal conversation between the parties to the effect that John was to have the land

for life, and then it was to go to the children of his first wife.

If the agreement found by the court be valid and enforceable, it amounted simply to a contract that Jacob would convey the land to John and John would transfer the land to the children at his death, and, if he continued to own the land until he died, the children, if they could enforce the contract made for their benefit, would have no right of action until he died; but when the father sold the land, and put it beyond his power to comply with his contract, we think a right of action would accrue to them; for, having contracted to transfer the land to the children so they would receive it at his death, a disposition of the land, and putting himself in a position where he could not comply with the agreement, would be a breach of the contract.

But if we are in error in this, and the contract be valid, it creates an express trust, as all that can be contended in support of it is that the grantor conveyed the land to the grantee with an express agreement that he was to take the title for the benefit of the grantee's children, subject to a life-estate in himself, and the conclusion stated by the court is that he, the grantee, held the legal title by a direct continuing life trust for his children by Lydia. Admitting this, it can not be established by parol evidence. This doctrine is so well settled as to scarcely need the citation of authority.

In the case of *Columbus, etc., R. W. Co.* v. *Braden*, 110 Ind. 558, the court says: " It appears that the title through which appellant claims was, on the face of the deed, in M. E. Ingalls, and the appellant offered to prove that he held it in trust for its benefit. There was no error in excluding this evidence, for the offer was not to prove facts from which the law would imply a trust, but to prove by oral statements the existence of an express trust, and this, it is well settled, can not be done. Express trusts can not be established by parol."

In *Pearson* v. *Pearson*, 125 Ind. 341, it is said: " It has

often been held by this court that a party who has not parted with anything of value can not be permitted to prove by parol that a purchase of land was made for his benefit or on his account." *Mohn* v. *Mohn*, 112 Ind. 285 ; *Thomas* v. *Merry*, 113 Ind. 83. And that is true in this case. The appellees Swartz and Knouff have parted with nothing. They seek to show that a deed made by Jacob Sell to John Sell, their father, absolute upon its face, was in fact a deed of trust, that John took the fee not for himself, as declared by the deed, but in trust for them.

It is said by the court in *Wright* v. *Moody*, 116 Ind. 175, that "A court of chancery will not enforce an unexecuted, imperfect trust, in favor of a volunteer." And this was said in a case very similar to the one at bar where it was contracted and was conveyed to the mother in trust for her children.

Counsel for appellees contend that the Ohio land was governed by the laws of that State, and that under the laws of that State there was a valid trust. Admit that the trust was a valid one under the laws of that State, yet the finding of facts clearly shows a disavowal of trust, and a holding of the land as the absolute owner in fee by John for more than twenty years. On February 3d, 1865, he sold and conveyed by warranty deed, to Mary Bard, all of the land that he then owned ; prior to that date he had sold and conveyed 17 $\frac{30}{100}$ acres of the land to other persons. The facts clearly show a use and disposition of the land in Ohio by John Sell, in utter disregard of any trust, and that his right to do so was never even questioned. The land he received in this State he used in like manner, selling and mortgaging the same as his own, and finally disposing of the same by will. If it can be said that the Ohio land in fact belonged to the plaintiffs below, and that it was held in trust by the father for them, the most favorable aspect of the case for them is that the father used the trust property in the purchase of the Indiana land, and a trust resulted in their favor in the Indiana land.

Yet the facts show a disavowal of any trust, and the use of the land as his own, ignoring and disavowing any trust for more than twenty years, and any claim they may have had to the land is barred by limitation before the bringing of this action. *Churchman* v. *City of Indianapolis,* 110 Ind. Ind. 259; *Ward* v. *Harvey,* 111 Ind. 471; *Newsom* v. *Board, etc.,* 103 Ind. 526. The parties were not under any disability which would excuse the bringing of the action.

This being an action to quiet title, it would be barred in fifteen years. *Royse* v. *Turnbaugh,* 117 Ind. 539.

It would seem, from the facts found, that the appellees were not at all diligent in endeavoring to enforce their rights, and they seem to have conceived the idea of enforcing their claim at a recent date. They had full knowledge of the disposition of the property by the will of their father; they acquiesce in it, and permit some of the land to be sold, and suffer the widow to accept the provisions of the will, to her detriment if their claim is enforceable; and after all this transpired they institute this suit. The conclusions of law stated by the court are erroneous, and can not be sustained. The facts found entitle the appellants to a judgment.

The judgment is reversed, with instructions to the circuit court to restate its conclusions of law, to the effect that the appellees take nothing by this action, and that appellants are entitled to recover their costs, and to render judgment in favor of the appellants, reserving to the appellees their rights under the will of John Sell, deceased.

Filed Oct. 9, 1891.