2005 UT App 272

In the matter of the MALUALANI B. HOOPIIAINA TRUSTS aka the Larayne J. Hartman Trust and the Donald Hartman Trust.

Michelle Samantha Gatlin Nolan, successor trustee of the Malualani B. Hoopiiaina Trusts; Michelle Samantha Gatlin Nolan, individually; and Michael Gatlin, individually, Plaintiffs and Appellants,

v.

Cuma S. Hoopiiaina, personal representative of the Estate of Malualani B. Hoopiiaina; Cuma S. Hoopiiaina, individually; Marlin M. Forsyth, individually; George K. Fadel, individually; Michael Gatlin; ISG Resources Ins.; Lisa Goodwill; and John Does 1 through 10, Defendants and Appellees.

No. 20040309–CA.

Court of Appeals of Utah.

June 16, 2005.

Nolan J. Olsen, Olsen & Olsen, Midvale, for Appellants.

Ralph C. Petty, Berrett & Associates, Salt Lake City, for Appellees.

Before Judges BENCH, GREENWOOD, and JACKSON.

OPINION

GREENWOOD, Judge:

¶1 Plaintiffs Michelle Samantha Gatlin Nolan (Michelle), both individually and as trustee for the Malualani B. Hoopiiaina Trusts, and Michael Gatlin (Michael) appeal from the trial court's order of summary judgment in favor of Defendants Cuma S. Hoopiiaina (Cuma), both individually and as

personal representative of the Estate of Malualani B. Hoopiiaina, et al. We reverse and remand.

## BACKGROUND

¶ 2 "When reviewing a district court's grant of summary judgment, 'we view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party,' here," Plaintiffs. *Wayment v. Clear Channel Broad., Inc.*, 2005 UT 25, ¶ 3, 523 Utah Adv. Rep. 39 (citation omitted). "We recite the facts of this case accordingly." *Id.*

¶ 3 This intrafamily dispute pits the grandchildren of Malualani B. Hoopiiaina (Malu)—Michelle and Michael—against Malu's widow, their stepgrandmother—Cuma—and Cuma's son, Marlin Forsyth.

¶ 4 In 1974, attorney George Fadel (Fadel) prepared two trust agreements for Malu. Malu executed those agreements, creating two irrevocable trusts (Trust I and Trust II). The first agreement conveyed title of real property located at 349 West 700 South, Salt Lake City, Utah, to Trust I. The second conveyed title of real property located at 345 West 700 South, Salt Lake City, Utah, and property related to a business located at that address to Trust II. These conveyances were recorded by the Salt Lake County Recorder shortly after they were executed. Additionally, both trust agreements provide that additional property or assets may be deposited into the trusts after their creation.

¶ 5 Both trusts had three trustees, including Malu and Inez Gatlin (Inez) [1] as trustees for both. Trust I included LaRayne J. Hartman as a trustee and was to pay her $400 a month from the time that she turned sixty-five until her death. Upon LaRayne J. Hartman's death, Inez, Michael, and Michelle would each receive one third of the income of the trust, until Michelle reached twenty-one years of age, at which point the trust was to terminate and the res would be divided equally among the three. Trust II included Donald Hartman as the third trustee and was to pay him $300 a month from the time that he turned sixty-five until his death, at which time the res would be distributed in the same manner as Trust I. It is undisputed that LaRayne J. and Donald Hartman are deceased. Michelle has turned twenty-one, but the record does not disclose when that occurred.

¶ 6 Malu died on May 20, 1997. Inez and the other trustees had predeceased him. However, prior to his death, in 1996, Malu drafted a holographic will and codicils to it, making no mention of the trusts. However, one codicil bequeathed "the 349 West properties 700 South" to Cuma and her son. Another codicil stated, "My daughter Inez Gatlin having died, I remove all provisions for Inez and her children."

¶ 7 Malu's estate was probated in a hearing on June 25, 1997, and Cuma was appointed personal representative. Fadel, Malu's attorney from 1974, was involved in the proceedings. Though Michelle and Michael were children when their grandfather created the trusts, Michelle believed that the trusts existed because Inez had told her of the trusts' existence when Michelle was a child. Based on this belief, Michelle voiced an objection at the probate hearing, but Fadel told her that there were no trusts, that her grandfather had disinherited her, and that she had no interest in the estate. Following this conversation, Michelle waived her objection. Shortly after his grandfather's death, Michael also inquired of Fadel, and Fadel also told him that there were no trusts and that he had no interest in the estate.[2]

¶ 8 Though Inez signed the trust documents as a trustee, Plaintiffs never had access to the trust documents. Moreover, while Plaintiffs believed that a trust existed, there is no indication in the record that Plaintiffs had any specific knowledge of the details of the trusts, including the identity of

---

1. Inez Gatlin is Malu's daughter and Plaintiffs' mother.

2. Fadel was legal counsel for the trusts in an action that was initiated in 1992, resulting in an unpublished memorandum decision issued in 1995. *See Williams v. Hoopiiaina*, No. 930758-CA (Utah Ct.App. Jan. 31, 1995). Although Plaintiffs' civil complaint originally named Fadel as a defendant, Plaintiffs voluntarily dismissed him.

the trustees or disposition of the trusts' assets.

¶ 9 On August 20, 1998, as personal representative of Malu's estate, Cuma deeded the property at issue to herself and her son. Sometime after the probate hearing, Michelle contacted an attorney who advised her that he could do nothing without the actual trust documents. Michelle took no further action until 2002, when she and Michael were contacted by a private detective and their present counsel, who informed them that they were beneficiaries of the trusts. Within a week, on August 26, 2002, Michelle filed a probate petition to have herself appointed as successor trustee for both trusts and to transfer Inez's interest in the trusts' assets to Michelle and Michael. In September 2002, Judge Noel signed an order appointing Michelle as successor trustee as well as an order that distributed their mother's— Inez's—share of the trusts to Plaintiffs. As successor trustee, Michelle distributed the assets of the trusts to herself and Michael and recorded deeds to the properties on September 10, 2002.

¶ 10 Shortly thereafter, Cuma filed a motion to set aside the order appointing the successor trustee. On October 10, 2002, Michelle filed a civil suit, which was assigned to Judge Nehring, against Cuma, et al., to quiet title to the disputed real property, to recover other trust property, for damages, and for an accounting.[3] In January 2003, Judge Henriod ruled on Cuma's motion and set aside the appointment of Michelle as successor trustee. In March 2003, Judge Nehring ordered that Michelle's probate proceeding be consolidated with the civil suit.

¶ 11 Eventually, Cuma and her son moved for summary judgment, which Judge Quinn granted. Judge Quinn determined that either a three or four-year statute of limitations barred Plaintiffs' claims. *See* Utah Code Ann. §§ 75–3–1006 (1993), 78–12–25 (2002). Further, Judge Quinn ruled that while the discovery rule applied, Plaintiffs knew of the facts necessary to put them on notice to act. Plaintiffs appeal.

## ISSUE AND STANDARD OF REVIEW

¶ 12 Plaintiffs appeal the trial court's grant of Defendants' motion for summary judgment. Summary judgment is proper when there is no genuine issue of material fact and "the moving party is entitled to a judgment as a matter of law." Utah R. Civ. P. 56(c). We review a trial court's grant of summary judgment for correctness, affording no deference to their legal conclusions. *See Wayment v. Clear Channel Broad., Inc.*, 2005 UT 25, ¶ 15, 523 Utah Adv. Rep. 39.

## ANALYSIS

### I. Violation of Trusts

¶ 13 Malu executed two trust agreements in 1974, creating irrevocable trusts, with Plaintiffs as the eventual sole beneficiaries when they each became twenty-one years old and the other named beneficiaries died. Trusts are succinctly described in *Banks v. Means*, 2002 UT 65, 52 P.3d 1190, as follows:

> It is well settled that [a] trust is a form of ownership in which the legal title to property is vested in a trustee, who has equitable duties to hold and manage it for the benefit of the beneficiaries. Once the settlor has created the trust he is no longer the owner of the trust property and has only such ability to deal with it as is expressly reserved to him in the trust instrument. Thus, a settlor has the power to modify or revoke a trust only if and to the extent that such power is explicitly reserved by the terms of the trust. Furthermore, the creation of a trust involves the transfer of property interests in the trust subject-matter to the beneficiaries. These interests cannot be taken from [the beneficiaries] except in accordance with a provision of the trust instrument.

*Id.* at ¶ 9 (alterations in original) (quotations and citations omitted).

¶ 14 Applying these principles to the trusts in this case, Malu, as settlor, did not

---

**3.** Originally, because Michelle and her counsel could not locate Michael, but because they believed that he had an interest in the trusts, he was named as a defendant. Later, Michael retained Michelle's counsel and was made a plaintiff in the action.

reserve to himself the power to revoke or modify the trusts. Both trusts included a provision stating: "This Trust shall be irrevocable. At no time shall any beneficial interest in the Trust property inure to the Settlor." Accordingly, Malu could not revoke the trusts. *See In re Flake,* 2003 UT 17,¶ 13, 71 P.3d 589 (stating "a settlor 'has the power to modify a trust only if and to the extent that such a power was reserved by the terms of the trust'" (quoting *Kline v. Department of Health,* 776 P.2d 57, 61 (Utah Ct.App.1989))); *Clayton v. Behle,* 565 P.2d 1132, 1133 (Utah 1977) (noting the settlor may not revoke the trust if he has not reserved a power of revocation). An irrevocable trust may be revoked only if "all beneficiaries thereof consent." *Clayton,* 565 P.2d at 1133. There is no assertion in this case that the trusts' beneficiaries ever consented to revocation of the trusts.

¶ 15 As a trustee, Malu had no power to revoke the trusts and could deal with the trusts' assets only as provided in the trust instruments. Further, the beneficiaries had equitable title to the trusts' assets because the trust instruments provide no means for the trustees to take or transfer those assets from the beneficiaries without their consent.

¶ 16 Accordingly, title to the trusts' assets was vested in Plaintiffs, and Malu could not transfer title to those assets via his will. *Cf. In re Estate of Jones,* 259 F.Supp. 951, 952 (D.D.C.1966) (mem.) (ruling property to which [a settlor] did not have a vested right at his death is not an asset of his estate). Thus, Malu's bequeathal of the property to Cuma and Cuma's subsequent transfer of the property to herself and her son were void and of no effect.

## II. Statutes of Limitation

¶ 17 The trial court held that Plaintiffs' claims were barred by either a three or four-year statute of limitations. The trial court's order referenced the three-year limitations in Utah Code Section 75-3-1006, *see* Utah Code Ann. § 75-3-1006 (1993) (actions against probate distributions), and the four-year limitations contained in Utah Code section 78-12-25(1) and (3), *see* Utah Code Ann.

§ 78-12-25(1), (3) (2002) (actions on an oral contract, etc., or relief not otherwise provided by law). The trial court also held that the discovery rule applied. Also, whichever statute applied, the trial court concluded that as of June 25, 1997, when Malu's estate was probated, Plaintiffs had sufficient knowledge of the facts to put them on notice to inquire, and that their failure to act until more than five years later resulted in their action being barred. While Defendants do not dispute the applicability of the discovery rule in this appeal, they argue it does not render Plaintiffs' action timely.

¶ 18 Plaintiffs sought various types of relief in their consolidated actions, including: quiet title, non-real property trust assets, damages, an accounting, and appointment of Michelle as successor trustee of the two trusts. The early Utah case of *Branting v. Salt Lake City,* 47 Utah 296, 153 P. 995 (1915), states that

> We are very clearly of the opinion that ... actions by which nothing is sought except to remove a cloud from or to quiet the title to real property as against apparent or stale claims are not barred by the statute of limitations, yet we are also clear that all actions in which the principal purpose is to obtain some affirmative relief ... come within the [statute of limitations].

*Id.* at 1001; *see also Davidsen v. Salt Lake City,* 95 Utah 347, 81 P.2d 374, 376 (1938) (reiterating the above-cited rule from *Branting* ). This rule "is premised upon the fact that a quiet title action, as its name connotes, is one to quiet an *existing* title ... and not one brought to *establish* title.... [T]he effect of a decree quieting title is not to *vest* title but rather is to *perfect* an existing title." *State ex rel. Dep't of Soc. Servs. v. Santiago,* 590 P.2d 335, 337–38 (Utah 1979).

¶ 19 Although Plaintiffs sought multiple forms of relief, they were primarily seeking to remove the cloud of Cuma's deed of the real property, as administrator of Malu's estate, to herself and her son. Further, the request that Michelle be named as successor trustee of the two trusts after the death of all named trustees, would not seem to be time barred. In order to wind up the trusts, as

directed in the trust documents there must be a trustee with the legal authority to deed the properties to the named beneficiaries. Thus, the claims to appoint a successor trustee and to quiet title are not time barred.

¶ 20 The remaining claims for relief—personal property, damages, and an accounting—are, however, subject to limitation. While there is no dispute that the discovery rule applies, there is a question of whether it affords Plaintiffs relief from the statutory limitation periods. This rule was recently clarified in *Russell Packard Development, Inc. v. Carson*, 2005 UT 14, 108 P.3d 741. In *Russell Packard*, the Utah Supreme Court identified two types of discovery rules: (1) an "internal discovery rule" where a statute of limitations specifically includes, by its own terms, application of the discovery rule, *id.* at ¶ 21; and (2) an "equitable discovery rule," where the "relevant statute of limitations provides only a fixed limitations period with no statutory discovery rule exception." *Id.* at ¶ 24.

¶ 21 None of the possible applicable statutes of limitation in this case contain an internal discovery rule. We must determine, therefore, if the trial court correctly applied the equitable discovery rule in determining that Plaintiffs' claims were barred. There are two situations in which the equitable discovery rule may toll a statute of limitations:

> (1) "where a plaintiff does not become aware of the cause of action because of the defendant's concealment or misleading conduct," and (2) "where the case presents exceptional circumstances and the application of the general rule would be irrational or unjust, regardless of any showing that the defendant has prevented the discovery of the cause of action."

*Id.* at ¶ 25 (quoting *Walker Drug Co. v. La Sal Oil Co.*, 902 P.2d 1229, 1231 (Utah 1995)). Plaintiffs' arguments are confined to the first situation, where concealment or misleading conduct is asserted. In examining a conceal-

ment claim, "the rule requires an evaluation of the reasonableness of a plaintiff's conduct in light of the defendant's fraudulent or misleading conduct." *Id.* at ¶ 26. A party seeking an enlargement of time under the equitable discovery rule must show that he or she "has acted in a reasonable and diligent manner" and that " 'given the defendant's actions, a reasonable plaintiff would not have brought suit within the statutory period.' " *Id.* (quoting *Warren v. Provo City Corp.*, 838 P.2d 1125, 1129–30 (Utah 1992)).[4]

¶ 22 Viewing the facts in the light most favorable to Plaintiffs, *see Wayment v. Clear Channel Broad., Inc.*, 2005 UT 25, ¶ 3, 523 Utah Adv. Rep. 39: Plaintiffs did not know the details of the trusts created by their grandfather when they were very young, much less know if they were irrevocable, assuming they would have understood the import of that term. Plaintiffs never saw copies of the trust agreements. After Malu's death, Defendants, through Fadel, told Plaintiffs that the trusts no longer existed and that they had no interest in Malu's estate. They believed what Fadel told them. After learning the true status of the trusts, they did not think that Fadel had intentionally deceived them, but that he had either forgotten or was mistaken about the law. Nevertheless, they relied on his advice. Michelle, however, went a step further and consulted another attorney. He told her he could not help her unless she had copies of the trust. It wasn't until 2002 that a private detective contacted Plaintiffs and informed them that the trusts had not terminated. They promptly filed an action at that time.

¶ 23 Determination of when a plaintiff would reasonably discover facts relative to a cause of action when a defendant has affirmatively concealed facts "is a 'highly fact-dependent legal question[ ]' that is 'necessarily a matter left to trial courts and finders of fact.' " *Russell Packard*, 2005 UT 14 at ¶ 39, 108 P.3d 741 (alteration in original) (citation omitted). Plaintiffs did not file

---

4. Defendants contend that the discovery rule is not applicable because none of the named defendants still in the case is alleged to have concealed facts from Plaintiffs. We do not agree. Although Fadel is no longer a party to this action, he was counsel for Defendants in the probate of Malu's estate and represented the trusts in the 1995 action in this court. *See Williams*, No. 930758–CA.

a cross-motion for summary judgment with the trial court. On appeal, Plaintiffs assert there are issues of fact that preclude summary judgment for Defendants. We agree that summary judgment is inappropriate.

¶ 24 " '[W]eighing the reasonableness of the plaintiff's conduct in light of the defendant's steps to conceal the cause of action necessitates the type of factual findings which preclude [judgment as a matter of law] in all but the clearest of cases.' " *Id.* (second alteration in original) (quoting *Berenda v. Langford,* 914 P.2d 45, 54 (Utah 1996)). This case does not qualify as one of the "clearest of cases." *Id.* A fact finder could certainly determine that Plaintiffs acted reasonably in not bringing suit within the applicable statute of limitations. Indeed, it would be hard to find otherwise.

## CONCLUSION

¶ 25 We hold that Malu, as settlor of the two irrevocable trusts did not have title to the property at issue, and therefore, could not bequeath it as part of his estate. He similarly could not transfer the property in the trusts, as a trustee, other than as directed in the trusts, to the surviving beneficiaries. Plaintiffs' claim to quiet title to the real property to remove the cloud on title created by the deed to Cuma and her son is not subject to a statute of limitations and may be pursued. Likewise, the petition to have Michelle appointed as trustee of the trusts is consistent with the trust instruments for the purpose of fulfilling the trust terms.

¶ 26 Accordingly, we remand for the purpose of a trial on the issue of whether the statutes of limitation applicable to Plaintiffs' other causes of action are tolled by the equitable discovery rule and for other proceedings consistent therewith.

¶ 27 I CONCUR: RUSSELL W. BENCH, Associate Presiding Judge.

JACKSON, Judge (concurring in part, dissenting in part):

¶ 28 I concur in part and dissent in part.

## I. TRUSTEE'S BREACH OF TRUST

¶ 29 The main opinion concludes that Malu "could not transfer the property in the trusts, as a trustee, other than as directed in the trusts." This evades the well-established principle that a trustee can breach the trust, thereby triggering the statute of limitations. *See* 90 C.J.S. *Trusts* § 125 (2002) ("The trust relationship may continue until it is terminated by a repudiation by the trustee...."); 76 Am.Jur.2d *Trusts* § 654 (2005) (stating that the statute of limitations is tolled only "until the trustee openly repudiates the trust"). The United States Supreme Court and Utah's courts have both long recognized this rule. *See Hammond v. Hopkins,* 143 U.S. 224, 252, 12 S.Ct. 418, 36 L.Ed. 134 (1892) ("[W]here a trustee [breaches the trust], the cestuis que trust are entitled to [take action] subject to the qualification that the application for such relief must be made within reasonable time...."); *Philippi v. Philippe,* 115 U.S. 151, 157, 5 S.Ct. 1181, 29 L.Ed. 336 (1885) ("[W]hen the trust is repudiated by ... the trustee who claims to hold the trust property as his own, ... the statute of limitation will begin to run."); *Wasden v. Coltharp,* 631 P.2d 849, 851 (Utah 1981) (per curiam) ("Where the trustee denies the obligation of his trust and the beneficiary has notice of his repudiation, the statute begins to run."); *Thomas v. Glendinning,* 13 Utah 47, 56, 44 P. 652, 654 (1896) ("[W]hen the trustee denies the trust and assumes ownership of the trust property, ... then the statute of limitations attaches."); *Wood v. Fox,* 8 Utah 380, 32 P. 48, 52 (1893) ("The law is that the statute of limitations begins to run against a claim growing out of a trust from the time the trustee repudiates the trust and the cestui que trust has notice.").

## II. STATUTE OF LIMITATIONS FOR AFFIRMATIVE RELIEF

¶ 30 The main opinion also concludes that the quiet title action is not subject to a statute of limitations. In *Branting v. Salt Lake City,* the Utah Supreme Court stated that

> [W]e are very clearly of the opinion that ... actions by which nothing is sought except to remove a cloud from or to quiet

title to real property *as against apparent or stale claims* are not barred by the statute of limitations, yet we are also clear that all actions in which the principle purpose is to obtain some affirmative relief ... come within the [statute of limitations].... 47 Utah 296, 153 P. 995, 1001 (1915) (emphasis added). This court has ruled that "[a] statute [of limitations] 'applied to *all actions,* both legal and equitable, in which affirmative relief is sought.'" *Dow v. Gilroy,* 910 P.2d 1249, 1251 (Utah Ct.App.1996) (emphasis in original) (quoting *American Tierra Corp. v. City of West Jordan,* 840 P.2d 757, 760 (Utah 1992)). To determine whether a claim seeks affirmative relief, the key distinction is not whether the claim is styled as a quiet title action but whether it is "against apparent or stale claims" as opposed to an active battle between adverse parties. In *Branting* itself and all of the cases that *Branting* cites on this point, the courts concluded that the parties sought affirmative relief where there were active, adverse claimants.[1] Thus, Nolan and Gatlin's action is not exempt from a statute of limitations merely because it is a quiet title action.

¶ 31 While I take issue with the main opinion for failing to recognize that a trustee's actions *may* trigger a limitations period, without more evidence, I would not adopt the Defendants' argument that Malu's actions in fact triggered the limitations period. Instead, I would instruct the trial court to permit the Defendants to provide such evidence on remand.[2]

## III. TOLLING OF LIMITATIONS PERIOD

¶ 32 I also take issue with both the trial court and the main opinion because Nolan was not Gatlin's agent, and her actions and knowledge should not be imputed to Gatlin.

¶ 33 Further, the main opinion remands to the trial court to weigh the reasonableness of the Plaintiffs' conduct in light of the Defendants' steps to conceal the cause of action. Because the trial court stated that it had considered the discovery rule, I would more specifically outline what factors the trial court did not but should consider. Specifically, the trial court should "apply a balancing test" to determine when "a rigid application of the statute ... [will] be irrational and unjust." *Snow v. Rudd,* 2000 UT 20,¶ 11, 998 P.2d 262 (quotations and citation omitted). This test "weigh[s] the hardship imposed on the claimant[s] ... against any prejudice to the defendant resulting from the passage of time." *Id.* (quotations and citation omitted). In this balance, the trial court should consider that (1) the Defendants never had any legal or equitable claim to the trust properties whereas Nolan and Gatlin had both,[3] (2)

1. *See Branting v. Salt Lake City,* 47 Utah 296, 153 P. 995, 1001 (1915); *see also Hecht v. Slaney,* 72 Cal. 363, 14 P. 88 (1887) (cited in *Branting* and finding that a statute of limitations applied in a dispute between active, adverse litigants); *Irey v. Markey,* 132 Ind. 546, 32 N.E. 309 (1892) (same); *Stonehill v. Swartz,* 129 Ind. 310, 28 N.E. 620 (1891) (same); *Royse v. Turnbaugh,* 117 Ind. 539, 20 N.E. 485, 487 (1889) (same); *Caress v. Foster,* 62 Ind. 145 (1878) (same); *see, e.g., Davidsen v. Salt Lake City,* 95 Utah 347, 81 P.2d 374, 377 (1938) (holding that "if [a plaintiff's] relief ... depend[ed] ... upon the cancellation of a deed for fraud or mistake, he must bring his action within the period provided by law for an action based upon that ground").

2. The Defendants assert that a statutory period of limitations began to run when Nolan and Gatlin received notice that Malu's will devised the property to Cuma and her son. I do not think that it is yet clear whether Malu breached the trust. Because "[t]rustees must act with good faith, loyalty, fairness, candor and honesty toward the trust beneficiaries," 76 Am.Jur.2d *Trusts* § 349

(2005), to breach a trust, a trustee must act in bad faith. "Bad faith is ... when a thing is done dishonestly and not merely negligently." *Research–Planning, Inc. v. Bank of Utah,* 690 P.2d 1130, 1132 (Utah 1984) (quotations and citation omitted). At present, the record lacks any evidence that Malu acted with intent, bad faith, or dishonesty. The breach that, on the present record, has been alleged is far from clear. Neither the sentence in Malu's holographic will nor his failure to mention the trusts expresses anything like the requisite clarity to deny the trust.

3. By operation of the Statute of Uses, when the terms of the trusts were fulfilled so that the trustees' (or trustee's) only duties were to deliver the trust property to the beneficiaries, the Plaintiffs were vested with legal title to the properties. *See* 27 Henry 8, c. 10 (1535 Eng.); *see also Garth v. Cotton,* Eng. Rep. 392 (Ch. 1753) (recognizing "jus in rem" and jus "ad rem"); *Henderson v. Adams,* 15 Utah 30, 48 P. 398, 401 (1897) (stating that the rule of the Statute of Uses "is part of the common law of this state."). Once Nolan

Nolan did take some action, (3) Cuma's agent Fadel misled Nolan and Gatlin, and (4) "the close familial relationship[s] involved" may have affected the parties actions. *Id.* at ¶ 11; *see also Walker v. Walker,* 17 Utah 2d 53, 404 P.2d 253, 257 (1965); *Acott v. Tomlinson,* 9 Utah 2d 71, 337 P.2d 720, 724 (1959).

## III. LENGTH OF LIMITATIONS PERIOD

¶ 34 I also take issue with the main opinion's failure to examine and specify which statute of limitations applies to which cause of action. The trial court ruled that one of several statutes of limitations applied, and the main opinion adds little clarity.[4]

¶ 35 First, the claim for the return of the rents and lease payments seeks return of mesne profits. Section 78–12–23(1) sets a six-year period of limitations "for the mesne profits of real property." Utah Code Ann. § 78–12–23(1) (1995). This specific statute controls over any more general one. *See Cathco, Inc. v. Valentiner Crane Brunjes Onyon Architects,* 944 P.2d 365, 369 (Utah, 1997) ("[T]he more specific provision will govern over the more general provision." (quotations and citation omitted)). It is uncontested that Nolan and Gatlin brought a claim within six years. Since I would hold that Nolan and Gatlin have held equitable title to the trust property since the formation of the trusts, they are entitled to the mesne profits regardless of the application of the statutes of limitations to the other claims.

¶ 36 Second, the gravamen of the wrongful deprivation claim lies in tort and does not straightforwardly stem from the trust instrument. Tort claims for the taking of personal property are governed by a three-year limitations period. *See* Utah Code Ann. § 78–12–26(2) (1995). The other tort claims, in-cluding the wrongful deprivation of real property, are subject to a four-year limitations period. *See id.* § 78–12–25(3) (1995). The punitive damage claim arises out of the tort claims and should be treated as ancillary to them with an identical period of limitation.

¶ 37 Third, in essence, the remaining claims all ask for the return of the trust property. The trial court's analysis was flawed to the extent that it considered section 75–3–1006 because neither "the claim of any claimant," as defined by Utah Code Title 75,[5] nor "the right of any heir or devisee" is at issue. Utah Code Ann. § 75–3–1006 (1995). Moreover, the Defendants' argument for section 78–12–19 should fail because Nolan and Gatlin are not "claiming under the decedent"—their claim does not stem from Malu's ownership but from their own—and, this is not an action to set aside a sale. *Id.* § 75–12–19 (1995).

¶ 38 Without explanation, the supreme court determined that section 78–12–25 limited recovery in a dispute between a beneficiary and a constructive trustee. *See Snow v. Rudd,* 2000 UT 20,¶ 9, 998 P.2d 262. Section 78–12–25 addresses in one subsection actions "upon a contract, obligation, or liability not founded upon an instrument in writing" and provides "for relief not otherwise provided by law" in another subsection. Utah Code Ann. § 78–12–25(1), (3). It limits recovery for these actions to four years. *See id.* Although the court's rationale for applying this statute was never made clear, the reason may be that although the obligation stemmed from a written instrument, the relief lay in equity, which is "not ... provided by law." *Id.* While there is implicit authority that would point us to Utah Code section 78–12–23(2) (1995), which grants a six-year period to bring claims "founded upon an instrument

---

turned twenty-one and the Hartmans died, the trust became passive, the Statute of Uses took effect, and the Plaintiffs became seised with the legal title to the trust property. Thus, Nolan and Gatlin were holders of both the legal and equitable title in the property in the LaRayne Hartman Trust after Nolan turned twenty-one and La-Rayne Hartman died, and they held legal and equitable title in the property in the Donald Hartman Trust after Nolan turned twenty-one and Donald Hartman died.

4. The trial court ruled that Nolan and Gatlin's claims were barred by Utah Code section 75–3–1006, 78–12–25(3), or 78–12–25(1). The Defendants argue that section 78–12–19 applies in this case.

5. Utah Code section 75–1–201(4) specifically excludes actions of this type from the definition of a "claim." Utah Code Ann. § 75–1–201(4) (1995).

in writing," namely *Thomas v. Glendinning*, 13 Utah 47, 44 P. 652 (1896), I feel that it is our duty to follow the supreme court's lead, even if its steps are shrouded.

¶ 39 Thus, on remand after determining how long the limitations period should be tolled, I would have the trial court apply a four-year limitations period, except as otherwise noted.

### IV. ADDITIONAL ISSUES

¶ 40 "[W]here an appellate court finds that it is necessary to remand a case for further proceedings, it has the duty of 'pass[ing] on matters [that] may then become material.'" *Bair v. Axiom Design, L.L.C.*, 2001 UT 20, ¶ 22, 20 P.3d 388 (first and second alterations in original) (citation omitted). I take issue with the main opinion's failure to address these points.

#### A. Ending of the Limitations Period

¶ 41 On remand, it may be necessary to determine when to stop counting to determine whether the limitations period expired. Two dates are possible: (i) August 26, 2002, when Nolan instituted a probate proceeding to have herself appointed as successor trustee and to convey Inez Gatlin's interest to herself and Gatlin, or (ii) October 10, 2002, when Nolan brought a civil claim directly against the Defendants. This appeal flows most directly from the civil claim, as the heading implies, but the probate proceeding was consolidated into that case. For the most part, Nolan effectively sought the same result from both actions—i.e., control over the trust property. And to that extent, the commencement of this action should be the first day on which Nolan took legal action to protect her interest in the trusts, August 26, 2002. On the other hand, to the extent that the civil case asks for punitive damages and tort claims, which were not raised in the probate proceeding, those actions were commenced on October 10, 2002.

#### B. Dowry

¶ 42 Cuma has raised the argument that because she had dowry rights to the trust property when Malu created the trusts, Malu could never have devised all of the property into the trusts. Utah Code section 74-4-3 was in effect and Malu and Cuma were married at the time that Malu transferred the property into the trusts. *See* Utah Code Ann. § 74-4-3 (1953) (repealed 1977) (providing that "[o]ne-third in value of all the legal or equitable estates in real property possessed by the husband at any time during the marriage, to which the wife has made no relinquishment of her rights, shall be set apart as her property in fee simple, if she survives him ...")." This interest, however, did "not vest until the death of her husband." *Boise Cascade Corp. v. Meyer*, 568 P.2d 755, 756 (1977). Because the provision was repealed before Malu died, Cuma's dower interests never vested; instead, she was protected by the elective share statutes, Utah Code sections 75-2-201 to -207. *See* Utah Code Ann. §§ 75-2-201 to -207 (1995). There is no information in the record to determine whether Malu adequately provided for Cuma, given that the trust property was not properly part of the estate. I would instruct the trial court that Cuma is not entitled to dower rights under Utah Code section 74-4-3.

### CONCLUSION

¶ 43 In conclusion, I concur in the result to reverse this case to the trial court. On remand, though, I would have the trial court permit the Defendants to introduce evidence that Malu breached the trust and triggered the limitations period. I dissent from the main opinion's conclusion that the quiet title action is exempt from a statute of limitations because the action requests affirmative relief. I would also specifically point out the factors in the discovery rule test that the trial court ignored to determine whether the Plaintiffs should both be charged with knowledge of Malu's breach. I would also make it clear that if the trial court determines that the statute of limitations was triggered, the trial court should apply a four-year statute of limitations to the quiet title claims, a three-year statute of limitations to the tort claims for personal property, and a six-year statute of limitations for the mesne profits.

¶ 44 I respectfully dissent in part and concur in the result.