2006 UT 53

In the matter of the Malualani B. HOOPI-IAINA TRUST, aka the Larayne J. Hartman Trust and the Donald Hartman Trust.

Michelle Samantha Gatlin Nolan, successor trustee of the Malualani B. Hoopiiaina Trust; Michelle Samantha Gatlin Nolan, individually; and Michael Gatlin, individually, Plaintiffs and Respondents,

v.

Cuma S. Hoopiiaina, personal representative of the Estate of Malualani B. Hoopiiaina, Cuma S. Hoopiiaina, individually; Marlin M. Forsyth, individually; George K. Fadel, individually; IFG Resources Inc.; Lisa Goodwill; and John Does 1 through 10, Defendants and Petitioners.

No. 20050619.

Supreme Court of Utah.

Sept. 19, 2006.

plaintiffs Michelle Samantha Gatlin Nolan's (Michelle)—both individually and as trustee for the Malualani B. Hoopiiaina Trusts—and Michael Gatlin's (Michael) suit should be characterized as a quiet title action and that quiet title actions are not subject to a statute of limitations. We accepted certiorari in order to clarify the legal principles underlying the application of the statute of limitations to claims seeking to quiet title to real property. We affirm the decision of the court of appeals and hold that plaintiffs' quiet title claims are not subject to a statute of limitations. We also modify the court of appeals' holding that summary judgment was inappropriate as to plaintiff's remaining claims and hold that the concealment version of the equitable discovery rule tolled the statutes of limitation on these claims as a matter of law.

## BACKGROUND

¶ 2 Because this case reaches us on certiorari from the court of appeals following the district court's grant of summary judgment in favor of defendants, we recite the facts in a light most favorable to plaintiffs, the non-moving party below. *Wayment v. Clear Channel Broad., Inc.*, 2005 UT 25, ¶ 3, 116 P.3d 271.

### I. FACTUAL BACKGROUND

¶ 3 This case involves an intrafamily dispute between the grandchildren of Malu (plaintiffs Michelle and Michael) and Malu's widow (plaintiffs' stepgrandmother Cuma) and her son Marlin Forsyth. The facts underlying this dispute are somewhat complicated and stretch back over thirty years. In 1974, attorney George K. Fadel prepared two similar trust agreements for Malu. These agreements were executed by Malu, as settlor of the trusts, on April 10, 1974. They were subsequently recorded in the Salt Lake County Recorder's Office on April 18, 1974. The first agreement (Trust I) conveyed the title to real property located at 349 West 700 South in Salt Lake City to Trust I. The second agreement (Trust II) conveyed the title to real property located at 345 West 700

Nolan J. Olsen, Salt Lake City, for plaintiffs and respondents.

Ralph C. Petty, Salt Lake City, for defendants and petitioners.

On Certiorari to the Utah Court of Appeals

DURHAM, Chief Justice:

¶ 1 This case, which reaches us on certiorari in the form of a quiet title action, involves a multi-generational family dispute over the ownership of certain real property that was placed into two irrevocable trusts over thirty years ago. Defendants Cuma S. Hoopiiaina (Cuma), individually and as personal representative of the Estate of Malualani B. Hoopiiaina (Malu), and Marlin Forsyth[1] request that we reverse the Utah Court of Appeals' decision. The court of appeals held that

1. While there are several other named defendants, Cuma and Mr. Forsyth are the only parties who appear to have taken actions relevant to our decision. Therefore, Cuma and Mr. Forsyth are the only defendants to whom we shall refer by name.

South as well as all personal property used in connection with the iron works business located at that address to Trust II. Both Trust I and Trust II also provided that additional property or assets could be deposited into the trusts after their creation. Importantly, each trust specifically provided that it was irrevocable.[2]

¶4 Under the terms of Trust I, three trustees were to administer the trust: Malu, his daughter Inez Gatlin (Inez) (the mother of plaintiffs), and LaRayne J. Hartman. Ms. Hartman was also an initial beneficiary of Trust I. Trust I provided that the trustees were to commence paying Ms. Hartman $400.00 per month, to continue for her lifetime, upon the death of Malu or when Ms. Hartman turned sixty-five years old, whichever occurred sooner. The remainder beneficiaries of Trust I were Inez and her children, plaintiffs Michelle and Michael. Trust I provided that upon the death of Ms. Hartman, the trustees were to begin paying the entire income of the trust property to these three beneficiaries annually, an undivided one-third to each. However, when Michelle reached the age of twenty-one, the trust was to terminate and the trust res was to be divided equally among the three.

¶5 Trust II also had three trustees: Malu, Inez, and Donald Hartman. The only significant difference between Trust I and Trust II is that the initial beneficiary of Trust II was Mr. Hartman, and the trustees were to pay Mr. Hartman $300 per month rather than $400. The income and res of Trust II were to be distributed amongst Inez and plaintiffs in the same manner as Trust I.

¶6 Ms. Hartman died on September 10, 1994. It is undisputed that Mr. Hartman is

also deceased, although the record does not disclose when he died. Inez died on April 24, 1996. Thus, plaintiffs eventually became the sole remaining beneficiaries of both Trust I and Trust II. However, the record does not indicate when Michelle turned twenty-one, which under the terms of the trusts should have had the effect of terminating the trusts and triggering the distribution of the res by the trustee. This distribution never occurred.

¶7 Malu, the last remaining trustee, died on May 20, 1997. Prior to his death, Malu drafted a holographic will and two codicils; the will was dated March 6, 1996, and the codicils were dated May 23, 1996, and May 15, 1997, respectively. The first codicil contained the following provision: "My daughter Inez Gatlin having died, I remove all provisions for Inez and her children." The second codicil purported to bequeath the property located at 349 West 700 South in Salt Lake City—the same property held in Trust I—to defendants Cuma and Mr. Forsyth in equal portions.[3]

¶8 A probate proceeding regarding Malu's estate was initiated on June 6, 1997, and a probate hearing was held on June 25, 1997. Cuma was appointed as the personal representative of the estate, and Malu's holographic will was found to be his last will and testament. Plaintiff Michelle appeared before the probate court at the June 25 hearing and objected to the will being probated in a manner inconsistent with the trusts.[4] After voicing her objection, Michelle spoke off the record with Mr. Fadel, the same attorney who had prepared the trust agreements for Malu in 1974[5] and who was present at the

---

2. The trust documents for Trust I and Trust II each contain the same provision, which states, "This trust shall be irrevocable. At no time shall any beneficial interest in the property inure to the Settlor."

3. The holographic will and codicils made no mention of the property held in Trust II.

4. At this point, neither of the plaintiffs had ever actually seen the trust documents, and thus had no specific knowledge of any of the provisions contained in the trusts. However, the record indicates that plaintiffs were designated as heirs in the probate proceeding and given notice.

Moreover, plaintiffs had been told in general terms by both Malu and Inez since they were very young that they were the beneficiaries of a trust created by Malu, and they were aware that Malu was the owner of the properties that were held by the trusts.

5. Mr. Fadel also represented Malu in his capacity as trustee in previous litigation in which the trusts were granted an easement over a property abutting the trust properties. This litigation terminated in a memorandum decision by the Utah Court of Appeals in 1995.

hearing as the attorney for Malu's estate.[6] Mr. Fadel represented to Michelle that no trusts even existed, that Malu had disinherited her, and that she had no interest whatsoever in Malu's estate.[7] Following her conversation with Mr. Fadel, Michelle returned to the judge's chambers and waived her objection.

¶ 9 Shortly after the probate hearing, Michelle contacted attorney Phil Dyer, with whom she discussed both Malu's will and the possible existence of the trusts. Mr. Dyer advised Michelle that he could do little to help her unless she had copies of the trust agreements. Because she did not have copies of the trust agreements,[8] and because Mr. Fadel had told her that no trusts even existed, Michelle took no further action at that time.

¶ 10 On August 20, 1998, Cuma, as personal representative of Malu's estate, deeded the real property held in Trust I to herself and Mr. Forsyth and the property held in Trust II to herself. The deeds were recorded that same day at the Salt Lake County Recorder's Office. Nothing further of note occurred in this dispute until August of 2002.

## II. PROCEDURAL BACKGROUND

¶ 11 On or about August 14, 2002, plaintiffs were contacted by a private investigator employed to locate them by plaintiffs' present counsel, attorney Nolan J. Olsen.[9] This investigator informed plaintiffs that they were the beneficiaries of a trust created by Malu and put them in touch with Mr. Olsen. The record indicates that this was the first point at which plaintiffs had confirmed knowledge that the trusts actually existed. Michelle

6. Mr. Fadel was initially joined as a defendant in this lawsuit but was dismissed pursuant to a stipulated motion to dismiss with prejudice on October 9, 2003.

7. Although not present at the June 25 probate hearing, plaintiff Michael contacted Mr. Fadel via telephone shortly thereafter and was given substantially similar information.

8. Michelle did not even know where to seek copies of any possible trust agreements other than through Mr. Fadel.

9. Mr. Olsen stated during oral argument that he became involved in this matter after he discover-

immediately contacted Mr. Olsen, who filed a probate petition on Michelle's behalf to have her appointed as successor trustee of Trust I on August 26, 2002.[10] Judge Noel was initially assigned to the probate proceeding. On September 10, 2002, Judge Noel signed an order appointing Michelle as successor trustee of Trust I and ordering her to convey the property held by the trust to the beneficiaries (Inez, Michelle, and Michael) in one-third undivided shares, as provided by trust agreement. On the same day, Michelle executed a deed transferring the property held by Trust I to the three beneficiaries as directed by the court; this deed was recorded with the Salt Lake County Recorder's Office on September 10th as well. Michelle also filed with the district court a petition to determine Inez's heirs—Inez having died intestate—and to distribute Inez's portion of the trust res. On September 25, 2002, the district court entered an order awarding plaintiffs each a one-half undivided interest in the one-third undivided interest owned by Inez in Trust I. During this same period of time, plaintiffs demanded that defendants conduct an accounting and turn over the property to plaintiffs; defendants refused to do so.

¶ 12 On September 27, 2002, Cuma and Mr. Forsyth filed with the district court a motion to set aside the order appointing Michelle successor trustee as well as the trustee's deed whereby Michelle had deeded the real property held by Trust I to the three beneficiaries.[11] On this same date, Cuma filed a lis pendens on the property held by Trust I.

ed the trust documents while conducting a title search at the Salt Lake County Recorder's Office. Realizing that plaintiffs were beneficiaries of the irrevocable trusts, he enlisted the services of a private investigator to locate them.

10. The probate petition does not mention Trust II.

11. Judge Henriod, who was later assigned to the probate proceeding, granted this motion on January 5, 2003, finding that Michelle was required to give notice to "any interested person" under Utah Code section 75–1–401(1) (2005) and had failed to give notice to Cuma and Mr. Forsyth.

¶ 13 On October 10, 2002, Michelle initiated a civil action in district court against Cuma, Mr. Forsyth, and several other defendants; Judge Nehring was initially assigned to the civil suit. In her complaint, Michelle sought to quiet title to the real property held by both Trust I and Trust II. Michelle also sought to recover other undisclosed trust property and damages for the period of time Cuma and the other defendants had deprived her and Michael of the trust property. Plaintiffs [12] filed an amended complaint with the district court on January 24, 2003, and defendants filed their answer on February 11, 2003. In their answer, defendants also asserted a counterclaim seeking to quiet title to the property in dispute and requested that they be reimbursed for money expended to improve the subject properties in the event plaintiffs prevailed on their quiet title claim.

¶ 14 On March 4, 2003, Judge Nehring ordered that the probate proceeding be consolidated with the civil proceeding. Following the consolidation, Judge Quinn was assigned to the case. On November 7, 2003, defendants moved for summary judgment, arguing that the statute of limitations barred plaintiffs' claims. Judge Quinn granted defendants' motion on November 26, 2003, although an order to that effect was not entered until February 4, 2004. In his order, Judge Quinn ruled that plaintiffs' claims were barred by either the three-year statute of limitations contained in Utah Code section 75–3–1006 (1993)—which limits actions against distributees—or the four-year statute of limitations contained in Utah Code section 78–12–25(3) (2002—which is the residual statute of limitations "for relief not otherwise provided for by law.") Judge Quinn also ruled that the discovery rule applied, but that plaintiffs had knowledge of facts sufficient to put them on notice to inquire about the disposition of the trust properties as of June 25, 1997 (the day of the probate hearing regarding Malu's estate).

¶ 15 Plaintiffs appealed Judge Quinn's grant of summary judgment in favor of defendants to the Utah Court of Appeals, which reversed the district court's decision. *Nolan v. Hoopiiaina*, 2005 UT App 272, ¶ 1, 118 P.3d 861. The court of appeals held that Malu had no power to revoke or modify the trusts and therefore could not transfer title to the trust property via his will. *Id.* ¶¶ 14–16. Accordingly, the bequest of the trust property to Cuma and Cuma's subsequent transfer of the trust assets to herself and Mr. Forsyth "were void and of no effect." *Id.* ¶ 16. The court further held that plaintiffs' suit primarily sought to quiet title to the real property held in the trusts by removing "the cloud of Cuma's [ineffective] deed of the real property . . . to herself and her son." *Id.* ¶ 19. Relying on several of this court's precedents, including *Branting v. Salt Lake City*, 47 Utah 296, 153 P. 995 (Utah 1915), and *Davidsen v. Salt Lake City*, 95 Utah 347, 81 P.2d 374 (1938), the court of appeals held that no statute of limitations applied to plaintiffs' quiet title action and therefore the action was not time-barred.[13] *Nolan*, 2005 UT App 272, ¶¶ 18–19, 118 P.3d 861.

¶ 16 The court of appeals held that a statute of limitations would apply to plaintiffs' remaining claims for relief—for the recovery of personal property held by the trust, for damages resulting from defendants' wrongful occupancy, and for an accounting. *Id.* ¶ 20. Relying on *Russell Packard Dev., Inc. v. Carson*, 2005 UT 14, 108 P.3d 741, the court of appeals held that summary judgment was improper as to the remaining claims because material disputes of fact existed regarding whether the equitable discovery rule would apply to toll the statute of limitations on these claims. *Nolan*, 2005 UT App 272, ¶¶ 20–24, 118 P.3d 861. Accordingly, the court of appeals remanded the case to the district court for a determination of these issues. *Id.* ¶ 26.

12. Michelle was initially the only plaintiff in the civil action; Michael could not be located. However, defendants moved to have Michael designated as a plaintiff and ordered to appear. Michael eventually joined in Michelle's amended complaint and designated Mr. Olsen as his attorney.

13. The court of appeals also held that Michelle's request that she be named successor trustee of the trusts was not time-barred. *Nolan v. Hoopiiaina*, 2005 UT App 272, ¶ 19, 118 P.3d 861.

¶ 17 Judge Jackson concurred in part and dissented in part, taking issue with the majority's conclusion that Malu could not transfer the trust property to anyone other than the trust beneficiaries. *Id.* ¶¶ 28–29. According to the dissent, "This evades the well-established principle that a trustee can breach the trust, thereby triggering the statute of limitations." *Id.* ¶ 29. The dissent also argued that a quiet title action is subject to a statute of limitations if it involves "an active battle between adverse parties." *Id.* ¶ 30.

¶ 18 Following the court of appeals' decision, defendants petitioned this court for certiorari. We accepted certiorari to consider whether plaintiffs' quiet title action is subject to a statute of limitations. This court has jurisdiction pursuant to Utah Code section 78–2–2(3)(a) (2002).

## STANDARD OF REVIEW

¶ 19 On certiorari review, we review the decision of the court of appeals, not the decision of the district court. *Longley v. Leucadia Fin. Corp.*, 2000 UT 69, ¶ 13, 9 P.3d 762. "On certiorari, we review the decision of the court of appeals for correctness." *Brookside Mobile Home Park, Ltd. v. Peebles*, 2002 UT 48, ¶ 11, 48 P.3d 968. This is the same standard of review we apply when we review a lower court's decision regarding the application of a statute of limitations, which is a question of law. *Russell Packard Dev., Inc. v. Carson*, 2005 UT 14, ¶ 18, 108 P.3d 741.

## ANALYSIS

¶ 20 The issue on certiorari is whether plaintiffs' quiet title action is subject to a statute of limitations. We conclude that no statute of limitations applies to plaintiffs' claims seeking to quiet title to the real property held in Trust I and Trust II because the relief plaintiffs seek in these claims is simply to quiet an existing title to property of which they are already the equitable owners

against defendants' adverse claims. As to plaintiffs' remaining claims—for the recovery of other undisclosed trust property and for damages, including rents, for the period of time defendants wrongfully deprived plaintiffs of the real property held in Trust I and Trust II—the statute does apply. However, we hold as a matter of law, that the concealment version of the equitable discovery rule tolled the statutes of limitation with respect to these claims until August of 2002.[14] Because defendants brought suit within two months of that time, no statute of limitations could operate to bar any of defendants' remaining claims.

## I. THE STATUTE OF LIMITATIONS DOES NOT APPLY TO PLAINTIFFS' QUIET TITLE CLAIMS

¶ 21 We begin with plaintiffs' quiet title claims. Defendants argue that plaintiffs' claims seeking to quiet title to the real property held in Trust I and Trust II are subject to a statute of limitations because plaintiffs seek affirmative relief. Defendants basically reiterate the argument made in the dissent in the court of appeals' opinion—that a quiet title action is subject to a statute of limitations if it involves "an active battle between adverse parties." *Nolan v. Hoopiiaina*, 2005 UT App 272, ¶ 30, 118 P.3d 861 (Jackson, J., concurring in part and dissenting in part). We disagree. Although we have addressed this issue in several prior cases, the legal standard is somewhat dated. Therefore, we take this opportunity to clarify the rule regarding the application of the statute of limitations to a quiet title action.

¶ 22 In *Branting v. Salt Lake City*, 47 Utah 296, 153 P. 995 (1915), we considered the applicability of the statute of limitations to a suit brought by the plaintiff in equity. *Id.* at 1000–01. In that case, Salt Lake City had passed several ordinances for the purpose of constructing a sewer and had assessed and levied a special tax on the property abutting the sewer—including the

14. Although we granted certiorari only to consider whether defendants' quiet title action is subject to a statute of limitations, our determination that the statute of limitations applies to defendants' remaining claims forces us to address the court of appeals' decision regarding the applicability of the concealment version of the equitable discovery rule as well. *See Nolan,* 2005 UT App 272, ¶¶ 20–26, 118 P.3d 861.

plaintiff's—to cover the construction costs. *Id.* at 996. The plaintiff filed suit against the city, arguing that the city had exceeded its authority and requesting that the court declare the city's actions void and of no effect. *Id.* at 996, 1000. As a defense, the city pleaded the four-year statute of limitations contained in the version of the "catch-all" statute of limitations then in effect. *Id.* at 1000. The plaintiff responded that the statute did not apply because his suit was merely "an action to remove a cloud from the title, or is one to quiet the title to real property." *Id.*

¶ 23 In addressing the plaintiff's argument, this court set forth the now well-established general rule that the catch-all statute of limitations "applies to all actions for relief that [are] not otherwise covered by any other section." [15] *Id.* at 1001. However, we also set forth an exception to this general rule:

> [A]ctions by which nothing is sought except to remove a cloud from or to quiet the title to real property as against apparent or stale claims are not barred by the statute of limitations . . . [though] all actions in which the principal purpose is to obtain some affirmative relief, as was the case here, clearly come within the provisions of [the statute of limitations].

*Id.* The plaintiff in *Branting* did not simply seek to have an adverse claim to his property adjudicated because the city had never questioned the plaintiff's title or asserted an adverse claim to it. *Id.* at 1000. Rather, the plaintiff sought to have the proceedings whereby the city sought to assess and levy the tax on his property declared illegal and annulled. *Id.* Because this constituted affirmative relief and not merely a settling of adverse claims to the title to real property, the four-year catch-all statute applied, and the plaintiff's claim was barred because he had not filed his suit until nearly five years after his cause of action accrued. *Id.* at 1001.

¶ 24 In *Davidsen v. Salt Lake City*, 95 Utah 347, 81 P.2d 374 (1938), we considered an issue similar to that in *Branting*. In

*Davidsen*, the plaintiff had agreed to deed certain real property to the city. *Id.* at 374. When he sent the deed to an agent of the city, the plaintiff included a letter stating that the deed was conditioned on the city making certain improvements. *Id.* The agent, annoyed that the conditions had not been mentioned in previous negotiations, sent the deed to the city commission without the letter. *Id.* The city accepted the deed and thereafter had it recorded. *Id.* The plaintiff subsequently demanded that the conditions specified in the letter be met, and brought suit when the city refused. *Id.* at 374–75. In his suit, the plaintiff asked to have the deed set aside on the grounds of fraud, to quiet title, and for general relief. *Id.* at 374. We held that the statute of limitations applicable to actions for relief on the ground of fraud or mistake barred the plaintiff's entire suit, including the quiet title claim. *Id.* at 376–77. The statute of limitations was applicable despite the fact that the plaintiff sought to quiet title to the real property because the relief sought by the plaintiff was "that a deed which he executed to defendant be cancelled for fraud." *Id.* at 376. Citing *Branting*, we stated that the plaintiff was seeking "affirmative relief other than removal of a cloud on his title." *Id.* We noted that the plaintiff could seek both to quiet title and to have the deed set aside in the same suit, "[b]ut if his relief in each case depends as here upon the cancellation of a deed for fraud or mistake, he must bring his [quiet title] action within the period provided by law for an action based on that ground." *Id.* at 376–77. Because the plaintiff's quiet title claim depended on the merits of the fraud claim, the statute of limitations applicable to fraud applied to the quiet title claim as well. *Id.*

■ ¶ 25 In *American Tierra Corp. v. City of West Jordan*, 840 P.2d 757 (Utah 1992), we updated the framework for determining statute of limitations issues in Utah. There, we again stated that the four-year catch-all statute of limitations applies to all causes of action, legal or equitable, "in which

---

**15.** The current version of the catch-all statute of limitations states that a four-year statute of limitations applies to all actions "for relief not other- wise provided by law." Utah Code Ann. § 78–12–25(3) (2002).

affirmative relief is sought" and another "more specific" statute of limitations does not apply. *Id.* at 760 (citing *Branting,* 153 P. at 1001).

■ ¶ 26 Under this framework, it is clear that all actions, whether legal or equitable, are subject to a statute of limitations in Utah. *Id.* (noting that Utah "long ago commingled legal and equitable actions" and has consistently "applied statutes of limitation to equitable actions"). However, suits brought to quiet the title to real property have always been an exception to this rule. A true quiet title action is a suit brought "to quiet an *existing* title against an adverse or hostile claim of another," and "the effect of a decree quieting title is not to *vest* title but rather is to *perfect* an existing title as against other claimants." *Dep't of Social Servs. v. Santiago,* 590 P.2d 335, 337–38 (Utah 1979). Thus, the question becomes whether a claim is a true quiet title action or whether the claimant really seeks other relief; if the claim is a true quiet title action, it is not subject to a statute of limitations. Courts must proceed cautiously when applying this rule, however, for parties should not be able to avoid the statute of limitations on other claims by simply disguising them as claims for quiet title relief.

■ ¶ 27 The lesson from *Branting* and *Davidsen* is that a court must examine the relief sought in order to determine whether the statute of limitations applies. When a party asserts a quiet title claim in which that party merely requests that the court adjudicate the validity of an opponent's adverse or hostile claim to property to which the party already holds title, no statute of limitations applies. In other words, if it is not necessary that the court grant other relief in favor of the party, such as cancelling a deed on the basis of fraud, in order to rule on the quiet title claim, then the statute of limitations cannot operate as a bar to the party's quiet title claim. *See Davidsen,* 81 P.2d at 376–77. Thus, in order to determine whether the statute of limitations applies to a quiet title claim, the court must assess on what basis the party would be entitled to have title quieted. If the party is entitled to have title quieted only if the court first finds in his or her favor on another legal issue, then the

same statute of limitations that applies to that legal issue will also apply to the quiet title claim. *Id.* Similarly, a party may seek to quiet title to real property in addition to requesting other relief in the same action. *Id.* Despite the fact that no statute of limitations applies to a true quiet title claim, the respective statutes of limitation applicable to the party's other claims for relief may operate to bar those claims. If the party's claim for quiet title relief can be granted only if the party succeeds on another claim, then the statute of limitations applicable to the other claim will also apply to the quiet title claim.

¶ 28 Defendants argue that all claims, including quiet title claims, are subject to a statute of limitations if affirmative relief is sought. According to defendants, a party requests affirmative relief if it "seeks assistance from the court in righting an asserted wrong." Defendants also rely on the argument made in the dissent below—that a quiet title action is subject to a statute of limitations if it involves "an active battle between adverse parties." *Nolan,* 2005 UT App 272, ¶ 30, 118 P.3d 861 (Jackson, J., concurring in part and dissenting in part). However, each of these arguments would destroy the exception that we have clearly carved out for quiet title actions. Virtually every lawsuit, whether it be a suit to quiet title to real property or otherwise, involves both a request that the court right an asserted wrong and "an active battle between adverse parties." *Id.* Therefore, neither of these tests provides a workable distinction between claims for true quiet title relief and other forms of relief, and each would have the effect of subjecting all quiet title actions to a statute of limitations. This would prevent a party seeking true quiet title relief from removing invalid claims, such as wild deeds, from the title to his or her property, thus rendering the property unmarketable. This is a result we cannot sanction. Accordingly, we hold that true claims for quiet title relief, determined under the legal framework set forth above, are not subject to a statute of limitations.

¶ 29 Having addressed the legal standard for determining whether a quiet title claim is subject to a statute of limitations, we must now apply this standard to determine wheth-

er any statutes of limitation apply to plaintiffs' claims seeking to quiet title to the real property held in Trust I and Trust II. This requires that we examine the basis for plaintiffs' quiet title claims and the relief plaintiffs are seeking in order to determine whether they are asserting true quiet title claims or whether we must first find in their favor on some other legal issue in order to reach the quiet title claims.

■■■■■ ¶ 30 The first step in our inquiry is to determine the basis of plaintiffs' quiet title claims. Plaintiffs' claims to the real property held in Trust I and Trust II arise from the irrevocable trust agreements themselves. In order to address the basis of plaintiffs' quiet title claims, it is therefore necessary to recite some trust principles and explain their application to this case. In a recent case, we provided the following description of trusts:

> It is well settled that [a] trust is a form of ownership in which the legal title to property is vested in a trustee, who has equitable duties to hold and manage it for the benefit of the beneficiaries. Once the settlor has created the trust he is no longer the owner of the trust property and has only such ability to deal with it as is expressly reserved to him in the trust instrument. Thus, a settlor has the power to modify or revoke a trust only if and to the extent that such power is explicitly reserved by the terms of the trust. Furthermore, the creation of a trust involves the transfer of property interests in the trust subject-matter to the beneficiaries. These interests cannot be taken from [the beneficiaries] except in accordance with a provision of the trust instrument.

*Banks v. Means,* 2002 UT 65, ¶ 9, 52 P.3d 1190 (alterations in original) (citations and internal quotation marks omitted). If a settlor does not specifically reserve the power to

revoke the trust in the terms of the trust agreement, then the trust may be revoked only if all the beneficiaries consent to the revocation. *Clayton v. Behle,* 565 P.2d 1132, 1133 (Utah 1977); Utah Code Ann. § 75–7–411(1) (2002).

■■■■ ¶ 31 We agree with the court of appeals regarding the application of these general principles to the case before us. *See Nolan,* 2005 UT App 272, ¶¶ 13–16, 118 P.3d 861. It is undisputed that Malu, as settlor of Trust I and Trust II, did not reserve the power to revoke or modify the trusts in the trust agreements and that the trusts specifically state that they are irrevocable. Nor did the trust agreements contain any provision that would allow Malu, as trustee, to simply transfer the trust assets to third parties without the beneficiaries' consent. *See Banks,* 2002 UT 65, ¶ 9, 52 P.3d 1190. Upon creation of the trusts, the beneficiaries were therefore immediately vested with equitable title to the trust properties; this title was recorded when the trust instruments themselves were recorded in 1974. Furthermore, there has been no contention in this case that the beneficiaries agreed to revoke the trusts. Accordingly, Malu in his capacity as settlor of Trust I and Trust II could not revoke or modify the trusts. When he created the trusts, Malu relinquished all ownership interests in the trust assets; he could thereafter act only as trustee. Because Malu had no ownership interest in the trust assets and no power as trustee to dispose of the trust assets, he had no ability to revoke the trusts or transfer title to the trust properties via his will.

■■■■ ¶ 32 With respect to the Trust II property, Malu did not in fact take any action to transfer title to defendants because his holographic will and the codicils to it—found to be his last will and testament—did not even mention the Trust II property.[16] Rath-

---

16. Defendants have argued, based on the dissent below, that Malu breached and repudiated the trust agreements, thereby commencing the running of the statute of limitations. *See Nolan,* 2005 UT App 272, ¶ 29, 118 P.3d 861 (Jackson, J., concurring in part and dissenting in part) (stating that the majority's holding "evades the well-established principle that a trustee can breach the trust, thereby triggering the statute of

limitations"). Defendants assert that they should be allowed to develop facts regarding Malu's alleged breach and repudiation on remand. Defendants' argument is wholly without merit as to the Trust II property. Malu could not have breached or repudiated Trust II because Malu took no action with respect to the Trust II property. The only party who ever acted adversely to

er, those documents simply contained the following blanket statement: "My daughter Inez Gatlin having died, I remove all provisions for her and her children." While this language may have had some effect as to the inheritance of Inez and plaintiffs, it did not purport to—nor could it—have any effect on their rights as beneficiaries of Trust II. Cuma therefore has no basis to claim an ownership interest in the Trust II property, and her attempt to transfer the real property held in Trust II to herself in 1998 constituted nothing more than the assertion of an invalid adverse claim; the deed she recorded is no more than a wild deed. Plaintiffs' quiet title claim with respect to the Trust II property is thus simply an action to remove an adverse claim to real property to which plaintiffs already hold equitable title—in other words, a true quiet title action. *See, e.g., Santiago*, 590 P.2d at 337 ("[A] quiet title action, as its name connotes, is one to quiet an *existing* title against an adverse or hostile claim of another."). It is not necessary for this court to rule in plaintiffs' favor on any other legal issue in order to determine whether plaintiffs are entitled to quiet the title to the Trust II property against Cuma's adverse claim. Accordingly, no statute of limitations applies to plaintiffs' quiet title action regarding the Trust II property.

¶ 33 The same result follows with respect to the real property held in Trust I. Although

Malu purported to transfer the Trust I property to Cuma and Mr. Forsyth via the second codicil to his holographic will, he had no ability to do so.[17] Malu in his capacity as settlor had no power to revoke or modify Trust I. We also agree with the court of appeals that Malu in his capacity as trustee had the power to deal only with the trust assets as specified in the trust agreement. *Nolan*, 2005 UT App 272, ¶ 15, 118 P.3d 861; *see also* Utah Code Ann. § 75-7-813(1)(a) (2002) (stating that a trustee has those "powers conferred by the terms of the trust"). Because Malu could not bequeath to Cuma and Mr. Forsyth something he did not have, Cuma and Mr. Forsyth hold nothing more than an adverse claim to the Trust I property. As with the Trust II property, plaintiffs' claim to quiet title to the real property held in Trust I is an action to remove an adverse claim to property to which they already hold title, and this court is not required to adjudicate a separate legal issue to reach plaintiffs' quiet title claim. Accordingly, no statute of limitations applies to plaintiffs' action to quiet title to the Trust I property.[18]

## II. THE CONCEALMENT VERSION OF THE EQUITABLE DISCOVERY RULE TOLLS THE STATUTES OF LIMITATION ON PLAINTIFFS' REMAINING CLAIMS

¶ 34 With respect to plaintiffs' remaining claims—for the recovery of other trust prop-

the Trust II property was Cuma, who improperly attempted to deed it to herself.

17. Defendants' argument that the statute of limitations commenced running when Malu breached and repudiated the trust agreements is also without merit with respect to the Trust I property. As discussed above, the statute of limitations does not apply to plaintiffs' claim to quiet title to the Trust I property. Therefore, no action taken by Malu could have had any effect on that claim. As to the rest of plaintiffs' claims, defendants' argument regarding Malu's alleged breach and repudiation is irrelevant. As discussed *infra* at ¶¶ 34–39, the concealment version of the equitable discovery rule tolled the statute of limitations on plaintiffs' remaining claims until August of 2002. Because no statute of limitations could possibly bar any of plaintiffs' claims given that plaintiffs brought suit within two months of that date, it makes no difference whether Malu breached and repudiated Trust I or not. Moreover, it is not entirely clear from the facts of this case that plaintiffs are even suing Malu, and

defendants' argument regarding Malu's alleged breach and repudiation would be relevant only to claims brought by plaintiffs, the beneficiaries, against Malu, the trustee. *See, e.g., Speidel v. Henrici*, 120 U.S. 377, 386, 7 S.Ct. 610, 30 L.Ed. 718 (1887) (noting that repudiation rule applies to suits by beneficiary against trustee); *Philippi v. Philippe*, 115 U.S. 151, 157, 5 S.Ct. 1181, 29 L.Ed. 336 (1885) (same); *Snow v. Rudd*, 2000 UT 20, ¶ 11, 998 P.2d 262 (same); *Wasden v. Coltharp*, 631 P.2d 849, 851 (Utah 1981) (same); *Thomas v. Glendinning*, 13 Utah 47, 44 P. 652, 654 (1896) (same). Accordingly, we hold that defendants are not entitled to the opportunity to develop facts regarding Malu's alleged breach and repudiation on remand.

18. We note that this case does not involve any claim of adverse possession, which would be an issue independent of the quiet title claim and would be governed by a seven-year statute of limitations. Utah Code Ann. §§ 78-12-5, -7 (2002).

erty and for damages due to defendants' wrongful occupancy, including rents—the statute of limitations does apply. Thus, the statutes of limitation applicable to these claims would have commenced running from the date that plaintiffs had a completed cause of action on any of these claims. *See Snow v. Rudd*, 2000 UT 20, ¶ 10, 998 P.2d 262. This would have occurred when defendants began asserting adverse claims to the trust property–either at the probate hearing on June 25, 1997, or when Cuma deeded the trust properties to herself and Mr. Forsyth on August 20, 1998. Under the framework set forth in *American Tierra Corp.*, 840 P.2d at 760,, we would normally be required to ascertain which statutes of limitation apply to plaintiffs' various remaining claims. However, this step is unnecessary in this case because we hold, as a matter of law, that the concealment version of the equitable discovery rule tolled the statutes of limitation on plaintiffs' remaining claims until August of 2002, when the existence of the written trust documents became known to plaintiffs. Because plaintiffs brought suit on all of their claims within two months of that date, no statute of limitations could possibly operate to bar any of plaintiffs' remaining claims.

 ¶ 35 While a statute of limitations generally begins running when a plaintiff has a completed cause of action, the discovery rule may nonetheless operate to toll a statute of limitations until the time at which a party discovered or reasonably should have discovered "facts forming the basis for the cause of

action." *Russell Packard Dev., Inc. v. Carson*, 2005 UT 14, ¶ 21, 108 P.3d 741 (citations and internal quotation marks omitted). The discovery rule may apply in either of two mutually exclusive settings: if a statutory discovery rule applies or if an equitable discovery rule applies. *Id.* ¶¶ 21–25. A statutory discovery rule applies only when a statute of limitations applicable to a cause of action, "by its own terms, mandates application of the discovery rule." [19] *Id.* ¶ 21. In contrast, there are two situations in which an equitable discovery rule will operate to toll a statute of limitations: "(1) where a plaintiff does not become aware of the cause of action because of the defendant's concealment or misleading conduct, and (2) where the case presents exceptional circumstances and the application of the general rule would be irrational or unjust." [20] *Id.* ¶ 25 (citations and internal quotation marks omitted).

 ¶ 36 Under the concealment version of the equitable discovery rule, "the reasonableness of a plaintiff's conduct [is evaluated] in light of the defendant's fraudulent or misleading conduct." *Id.* ¶ 26. If the plaintiff has filed his claim outside of the statutory period relevant to a certain cause of action, he may raise the concealment version of the discovery rule to toll the statute of limitations if he demonstrates that he "neither discovered nor reasonably should have discovered the facts underlying the cause of action before the limitations period expired" due to the defendant's concealment.[21] *Id.*

19. It is irrelevant to our analysis whether any of the statutes of limitation that may apply to plaintiffs' claims actually contain a discovery rule. Even if an applicable statute of limitations contains a discovery rule, the statute will not commence running until the plaintiff "has actual or constructive knowledge of the relevant facts forming the basis of the cause of action." *Russell Packard Dev., Inc. v. Carson*, 2005 UT 14, ¶¶ 21–22, 108 P.3d 741. Because we hold that plaintiffs did not have constructive knowledge of the facts forming the bases of their various claims until August of 2002, no limitations period would have commenced running until that time. *See infra* ¶¶ 38–39. Thus, it is not necessary that we determine what statutes of limitation apply and whether any of them contain a discovery rule.

20. Because our holding with respect to the concealment version of the equitable discovery rule

is dispositive, we do not address the exceptional circumstances version.

21. Even if the plaintiff either did know "or reasonably should have known of the facts underlying his or her cause of action before a limitations period expired," he can nonetheless benefit from the application of the concealment version of the equitable discovery rule if he can "show that, given the defendant's actions, the plaintiff acted reasonably in failing to file suit before the limitations period expired." *Russell Packard*, 2005 UT 14, ¶ 30, 108 P.3d 741. If the plaintiff does so, the statute will not commence running "until the point at which the plaintiff either discovered or reasonably should have discovered the relevant facts forming the basis of the cause of action." *Id.* Because we hold that plaintiffs did not know and could not have reasonably discovered the facts underlying their causes of action before

¶ 29. If the plaintiff can make such a demonstration, the statute of limitations will not commence running "until the date the plaintiff possessed actual or constructive knowledge of the facts forming the basis of his or her cause of action." *Id.*

■ ¶ 37 The Utah Court of Appeals held that the district court had erred in granting summary judgment on plaintiffs' remaining claims because issues of fact existed regarding the application of the concealment version of the equitable discovery rule.[22] *Nolan v. Hoopiiaina*, 2005 UT App 272, ¶¶ 23–24, 118 P.3d 861. According to the court of appeals, "[a] fact finder could certainly determine that [plaintiffs] acted reasonably in not bringing suit within the applicable statute of limitations. Indeed, it would be hard to find otherwise." *Id.* ¶ 24. We agree with the court of appeals that the district court clearly erred in granting summary judgment in favor of defendants. We, however, disagree with the court of appeals that it is necessary to remand this case to the district court for a trial on the applicability of the equitable discovery rule. *Id.* ¶ 26. It is true that determining when a plaintiff should reasonably have discovered the facts sufficient to establish a cause of action and whether a plaintiff acted reasonably under the circumstances are both fact-intensive inquiries that "preclude [judgment as a matter of law] in all but the clearest of cases." *Russell Packard*, 2005 UT 14, ¶ 39, 108 P.3d 741 (citing *Berenda v. Langford*, 914 P.2d 45, 54 (Utah 1996)). While these questions are usually left to the trial court, judgment as a matter of law is appropriate when "the facts are so clear that reasonable persons could not disagree about the underlying facts or about the application of the governing legal standard to the facts." *Id.* (citing *Berenda*, 914 P.2d at 54).

■ ¶ 38 Because the undisputed facts underlying the case before us unquestionably meet the concealment version of the equitable discovery rule, this case is one of "the clearest of cases" in which judgment as a matter of law is warranted. *Id.* (citing *Berenda*, 914 P.2d at 54). Though plaintiffs had been told when they were children that they were the beneficiaries of a trust created by their grandfather, Malu, they had no knowledge of any of the details of the trusts. They had never seen copies of the trust agreements and did not know what property was held in the trusts. After being notified that Malu's estate was being probated, Michelle showed up at the probate hearing held on June 25, 1997, and generally asserted plaintiffs' interests, although she had no actual knowledge that they were entitled to anything. At the hearing, Mr. Fadel—acting on behalf of Malu's estate and thus representing Cuma—told plaintiffs that no trusts even existed, that they had been disinherited, and that they had no interest in Malu's estate, notwithstanding that he himself had drafted the trust agreements and had represented Malu in his capacity as trustee in an action brought on behalf of the trusts only two years earlier.[23] On the basis of Mr. Fadel's statements, Michelle withdrew her objection to the probate proceeding. Mr. Fadel repeated these same statements to Michael in a telephone conversation shortly after the probate proceeding. Therefore, at the time Cuma and Mr. Forsyth began asserting adverse claims to the trust property, plaintiffs were not aware that Cuma and Mr. Forsyth were acting adversely to something plaintiffs were entitled to because plaintiffs had been

---

August of 2002, and because plaintiffs filed their suits within two months of that time, we do not address this second situation. *See infra* ¶¶ 38–39. Even if a relevant statute of limitations expired between when plaintiffs had knowledge of their causes of action—in August of 2002—and when they filed suit—within two months—plaintiffs certainly acted reasonably because they filed suit promptly once they were aware they had a cause of action.

22. In granting summary judgment for defendants, the district court held that plaintiffs, "as a matter of law, had knowledge as of June 25,

1997 of all the facts necessary to put them on notice to inquire as to whether their failure to receive the [trust] properties breached the trust. [Plaintiffs] knew nothing in 2002 that they did not know in 1997." The record does not, however, support this conclusion. *See infra* ¶ 38.

23. We note that these misleading statements were clearly false and may subject Mr. Fadel to disciplinary action. Accordingly, we shall refer this matter to the disciplinary committee of the Utah Bar for further investigation.

misled by Mr. Fadel's statements to believe that no trusts existed. Moreover, plaintiffs had no way to determine if the trusts did exist or what their interests were because they did not know where to seek copies of the trust agreements other than through Mr. Fadel. Plaintiffs did not have actual knowledge that the trusts even existed until around August 14, 2002, when a private detective hired independently by Mr. Olsen located them, and Mr. Olsen subsequently informed them about the irrevocable trusts. Upon receiving this information, plaintiffs promptly took legal action to protect their interests; both the probate proceeding and the civil action were filed within two months.

¶ 39 These circumstances clearly support the application of the concealment version of the equitable discovery rule as a matter of law. Plaintiffs' claims arise from their ownership of the Trust I and Trust II assets. Therefore, in order for plaintiffs to be aware of the facts underlying their causes of action, it was necessary that they first know of the existence of the trusts. However, there is no question that plaintiffs did not have actual knowledge that the trusts existed until August of 2002. Moreover, given defendants' active concealment of the existence of the trusts and plaintiffs' interests, it was entirely reasonable for plaintiffs not to discover "the facts underlying the[ir] cause[s] of action" until that date. *Id.* ¶ 29. Accordingly, we hold as a matter of law that the equitable discovery rule operates to toll any applicable statutes of limitation until August 14, 2002. Because plaintiffs filed both lawsuits that were consolidated in this action within two months of that date, no statute of limitations could possibly operate to bar any of plaintiffs' remaining claims.

### CONCLUSION

¶ 40 We hold that plaintiffs' claims seeking to quiet title to the real property held in Trust I and Trust II are true quiet title claims because the relief plaintiffs seek is simply a determination that defendants' adverse claims are invalid, and it is not necessary that we find in plaintiffs' favor on any other legal issue in order to reach the quiet title claims. Thus, plaintiffs' quiet title claims are not subject to a statute of limitations. We therefore remand this case to the district court with instructions to quiet title to the real property held in Trust I and Trust II in plaintiffs.

¶ 41 We also hold that the statutes of limitation applicable to plaintiffs' remaining claims were tolled by the concealment version of the equitable discovery rule until August 14, 2002. As plaintiffs brought suit within two months of that date, no statute of limitations could operate to bar any of plaintiffs' remaining claims. Because plaintiffs' remaining claims require an accounting, we instruct the district court to require defendants to render an accounting of the trust property on remand and to conduct any other necessary proceedings consistent with this opinion.

¶ 42 Associate Chief Justice WILKINS, Justice DURRANT, Justice PARRISH, and Justice NEHRING concur in Chief Justice DURHAM's opinion.